GOVERNMENT AND CIVIC EMPLOYEES ORGANIZING COMMITTEE, CIO et al.

v.

WINDSOR et al.

No. 7466.

United States District Court,
N. D. Alabama, S. D.

Nov. 9, 1953.

Arthur J. Goldberg, David E. Feller, Thomas E. Harris, Washington, D. C., Cooper, Mitch & Black, and Jerome A. Cooper, Birmingham, Ala., for plaintiffs.

Si Garrett, Atty. Gen. of State of Alabama; M. Roland Nachman, Jr., Asst. Atty. Gen., and Jesse M. Williams, Atty., Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge, LYNNE and GROOMS, District Judges.

GROOMS, District Judge.

This action is for an injunction and declaratory judgment. Jurisdiction is invoked under 28 U.S.C.A. §§ 1331, 1343 and 2201. Since the injunction sought is to restrain the enforcement, operation and execution of a statute of the State of Alabama, this court is convened pursuant to Title 28 U.S.C.A. § 2284. The statute involved is House Bill 231, known as the "Solomon Bill."[1] This statute be-

1. "Be It Enacted by the Legislature of Alabama:

"Section 1. As used in this act the term 'labor union or labor organization' means any organization of any kind, in which employees participate for the purpose of dealing with one or more employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work; and the term 'public employee' means any person whose compensation is derived in whole or in part from the State, or any agency, board, bureau, commission or institution thereof.

"Section 2. Any public employee who joins or participates in a labor union or labor organization, or who remains a member of, or continues to participate in, a labor union or labor organization thirty days after the effective date of this act, shall forfeiture all rights afforded him under the State Merit System, employment rights, re-employment rights, and other rights, benefits, or privi-

leges which he enjoys as a result of his public employment.

"Section 3. This act shall not apply to persons employed as teachers by any county or city board of education or trade schools or institutions of higher learning, nor shall it apply to those employees of the State Docks Board referred to in Title 38, Section 17, of the Code of Alabama, 1940, nor shall it apply to employees of cities or counties.

"Section 4. Any public employee who prior to the passage of this act or to his public employment belonged to a labor union or labor organization and as a result thereof has acquired insurance benefits or any other financial benefits may continue to participate in such labor union or labor organization to the extent that he shall not lose any benefits thus acquired.

"Section 5. The provisions of this act are severable. If any part of the act is declared invalid or unconstitutional, such

came effective on September 18, 1953. By stipulation, the case is submitted for final decree upon the pleadings, affidavits, and testimony taken orally.

This action is filed by the Government and Civic Employees Organizing Committee, CIO, an unincorporated association, and E. J. Habshey, a clerk employed at Alabama Liquor Store No. 75, Birmingham. The defendants are J. T. Thrower, who is Chairman of the Alabama Alcoholic Beverage Control Board, William K. Thames and Maury A. McWilliams, members of the Board, R. P. McRee, Administrator of the Board, S. F. Windsor, District Store Supervisor of the Board in Birmingham, and Felix L. Parsons, Store Manager of Store No. 75.

Habshey is a member of the plaintiff union and intends to remain a member and to continue to participate in its activities. He has not acquired any insurance or other financial benefits as a result of such membership.

Several days after the passage of the Solomon Bill, defendant Parsons gave Habshey and the other employees of Store 75 a copy of the Bill. They were also shown a letter from defendant McRee requesting that they read, "understand," and initial one copy of the Bill. This copy was to be forwarded to Montgomery and another copy retained at the store. This appears to have been a routine procedure. On October 2, 1953, the union orally and by wire requested defendant McRee to advise it what enforcement steps the Board contemplated taking to enforce the Bill. McRee replied that he was directed by the Board to inform the union "that the Solomon Bill will be enforced by the Board in the same manner as the ABC Act or other pertinent laws." The following day defendant Windsor told representatives of the union that he was required to carry out any and all orders of the Board and Administrator McRee.

Habshey has been an employee of the Board for three years. His present salary is two hundred and ten dollars per month, and he has no other available means of making a livelihood. Union dues are two dollars monthly. The union has expended in excess of three thousand dollars, exclusive of interest and costs, in solicitation efforts and as organizational expense in organizing Board employees. Before the passage of the Solomon Bill, there were approximately eight hundred members of the union employed by the various agencies of the State. Included among these were two hundred employees of the Board. At this time there are about two hundred and fifty members in all State agencies. Many members of plaintiff union employed by the Board have withdrawn from membership since the passage of the Bill. The Board has never recognized the union.

No rules or regulations have been proposed or adopted interpreting or implementing the Solomon Bill. No directives or orders have been issued to supervisors, store managers, or other employees with regard to the administration of the Bill. The Board has adopted no specific policies concerning the Bill other than a general recognition of the duties to enforce all the laws of Alabama relating to the Alabama Alcoholic Beverage Control Board. Neither Habshey nor any other employee has been threatened with discharge or dismissal or deprivation of employee rights, benefits or privileges by reason of continued membership and participation in the plaintiff union. No inquiries or investigations have been made by or on behalf of the Board concerning union membership. No action has been taken by the State Personnel Board or its Director whereby any employee of the Alcoholic Beverage Control Board has been dismissed from his employment or deprived of any of his rights, benefits and privileges accorded him by reason of his

declaration shall not effect the part which remains.

"Section 6. All laws or parts of laws which conflict with this act are repealed.

"Section 7. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law."

public employment in the Merit System of Alabama, because of membership in any labor union. Habshey has enjoyed full Merit System status, and except to the extent that the Solomon Bill has affected his status, presently enjoys all the rights, benefits and privileges accorded under the Merit System.

The "forfeiture clause" by its terms was without force until thirty days after the effective date of the Bill. This action was instituted on October 7, 1953—eleven days before the expiration of such thirty-day period. No State administrative or judicial proceedings are pending and the Bill is administratively and judicially undefined.

Plaintiffs contend that the challenged statute is self-executing and that it lends itself to no possible construction other than that of unconstitutionality under the Due Process Clause of the Fourteenth Amendment. They insist that they do not have to wait longer before seeking relief in a federal court, because they think that "Alabama's Legislature has used unmistakably simple, clear, and mandatory language" and that "there is neither need for interpretation of the statute nor any other special circumstance requiring the federal court to stay action pending proceedings in the State courts." Toomer v. Witsell, 334 U.S. 385, 392, 68 S.Ct. 1156, 1160, 92 L.Ed. 1460. The defendants assert among other grounds that plaintiffs have not exhausted available state administrative and judicial remedies and that consequently this court, as a matter of sound, equitable discretion, should decline to exercise jurisdiction.

■■ The Solomon Bill concerns an important area of State administration and proclaims a broad legislative policy as to such administration. As to employees working for the State, there can hardly be any dispute that the settlement of grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work are matters for the State government to be performed through its legislative and executive departments, and are not matters for collective bargaining to be participated in by a labor union or labor organization. Section 1 of the Act defines "labor union or labor organization," and, as so defined, the Act could well be construed by the state courts simply as prohibiting a public employee from being a member of or participating in such an organization for the purpose of collective bargaining with the State and, as so construed, meet the challenge of unconstitutionality.

■ It is the duty of this court, as of all other federal courts, to avoid the unnecessary decision of constitutional questions. Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725. In the McAdory case, the Supreme Court said:

"* * * In advance of an authoritative construction of a state statute, which the state court alone can make, this Court cannot know whether the state court, when called on to apply the statute to a defined case or controversy, may not construe the statute so as to avoid the constitutional question. For us to decide the constitutional question by anticipating such an authoritative construction of the state statute would be either to decide the question unnecessarily or rest our decision on the unstable foundation of our own construction of the state statute which the state court would not be bound to follow. Spector Motor Service, Inc., v. McLaughlin, 323 U.S. [101] at page 105, 65 S.Ct. [152] at page 154 [89 L.Ed. 101]; see also Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327; Huddleston v. Dwyer, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246. Such is not the function of the declaratory judgment." 325 U.S. at pages 470–471, 65 S.Ct. at page 1394.

■ The exercise of jurisdiction under the Federal Declaratory Judgment Act is discretionary and not compulsory. Smith v. Massachusetts Mutual Life Ins. Co., 5 Cir., 167 F.2d 990; Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct.

1173, 86 L.Ed. 1620. The remedy by injunction is likewise discretionary. Peay v. Cox, 5 Cir., 190 F.2d 123.

Many recent federal cases reflect the doctrine of abstention whereby the federal courts "exercise a wise discretion" in withholding exercise of jurisdiction. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Spector Motor Service, Inc., v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Shipman v. Dupre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877; Alabama Public Service Comm. v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002; Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138.

We will not undertake to analyze these decisions nor to quote or restate their many applicable observations other than to consider briefly the opinion in the Watson case as illustrating the extent to which the Supreme Court has gone in withholding the exercise of jurisdiction. In that case, appellants sued to enjoin enforcement of the "Right to work" Amendment of the Florida Constitution, Declaration of Rights, § 12, as amended in 1944, on the ground that it violated the First and Fourteenth Amendments and the Contract Clause of Article I, Sec. 10, of the Federal Constitution, and was in conflict with National Labor Relations Act, 29 U.S.C.A. § 151 et seq. A three-judge court, without determining whether there was equity in the bill or whether the case should be held until an authoritative interpretation of the Florida law by the Florida courts could first be obtained, proceeded at once to a consideration of the constitutional questions. It held that the Amendment did not violate the several constitutional provisions and that there would be time to consider any conflict with the National Labor Relations Act, if and when it arose, since that Act and the Amendment did not on their face appear to be in conflict. The court then vacated its temporary restraining order and dismissed the bill. The Supreme Court stated that the threat to enforce the Florida law was real and imminent; that *quo warranto* proceedings had already been instituted against several of the corporations who were parties to the suit based on the fact that they had closed-shop agreements with the unions, and that appellee Watson had announced a policy to prosecute criminally all violators of the law, including appellant unions, their officers, agents, and individual members, unless they gave up their closed-shop agreements and refrained from renewing or entering into any such agreements. The Court held that the bill had equity, but that trial court erred in adjudicating the merits of the controversy, saying:

"* * * The crux of the matter is the allegation that there is an imminent threat to an entire system of collective bargaining, a threat which, if carried through, will have such repercussions on the relationship between capital and labor as to cause irreparable damage. We conclude for that reason that the bill states a cause of action in equity.

"As we have said, the District Court passed on the merits of the controversy. In doing so at this stage of the litigation, we think it did not follow the proper course. The merits involve substantial constitutional issues concerning the meaning of a new provision of the Florida constitution which, so far as we are advised, has never been construed by the Florida courts. Those courts have the final say as to its meaning. When authoritatively construed, it may or may not have the meaning or force which appellees now assume that it has. In absence of an authoritative interpretation, it is impossible to know with certainty what constitutional issues will finally emerge. What would now be written on the constitutional questions might therefore turn out to be an

academic and needless dissertation." 327 U.S. at pages 595–596, 66 S.Ct. at page 767.

At the time of the decision in the Watson case, there were proceedings pending in the State court. There are no such proceedings here. However, the application of the rule of abstention is not conditioned upon the pending of a state administrative or judicial proceeding. If the rule were otherwise, a litigant by the mere device of selecting the federal court as his forum, could, in many cases, pre-empt the exercise of jurisdiction.

This action falls within the sweep of the Watson and other cases last referred to and is one in which the court should withhold the exercise of jurisdiction. However, in line with the procedure approved in several of the cited cases, the cause will not be dismissed, but will be retained and remain pending for a reasonable time to permit the exhaustion of such State administrative and judicial remedies as may be available; and thereafter such further proceedings will be had as may then appear to be lawful and proper.