324 F.2d 899
 The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Kansas
corporation, Plaintiff-Appellant,
v.
BROTHERHOOD OF RAILROAD TRAINMEN, a voluntary association,
General Grievance Committee, Brotherhood of Railroad
Trainmen, The Atchison, Topeka and Santa Fe Railway Company,
a voluntary association, B. W. Fern and S. Vander Hei,
Defendants-Appellees.
 No. 14085.
 United States Court of Appeals Seventh Circuit.
 Nov. 14, 1963, Rehearing Denied Dec. 18, 1963.
 
 C. George Niebank, Jr., Chicago, Ill., Starr Thomas, W. J. Swartz, Chicago, Ill., for appellant.
 John J. Naughton, Chicago, Ill., for appellees.
 Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 The Atchison, Topeka and Santa Fe Railway Company, a Kansas corporation, plaintiff, has appealed from a judgment of the district court entered on October 19, 1962, which disposed of plaintiff's complaint, filed September 26, 1962, by refusing to enjoin defendants from calling a strike, as prayed in counts I, II and IV thereof.
 
 
 2
 Brotherhood of Railroad Trainmen, defendant, a voluntary association, is a labor organization within the meaning of the Railway Labor Act and is the collective bargaining agent for all of plaintiff's employees who are classified as switchmen, road brakemen, switch tenders, car retarder operators and yardmasters. The other defendants named in the title hereof are respectively a department of the Brotherhood (its bargaining representative) and two of its vice presidents.
 
 
 3
 On September 28, 1956 the Grievance Committee served on Santa Fe a notice pursuant to section 6 of the Railway Labor Act, 45 U.S.C.A. 156, requesting a revision of and changes in the separate schedules of the road and yard employees on Santa Fe's Eastern and Western Lines. Subsequently, Santa Fe served certain counterproposals on said Committee. Conferences between the parties were held in October and December, 1956. They were discontinued from April 7, 1957 until October 31, 1959 because of a moratorium imposed on the parties by virtue of an agreement reached nationally between the Brotherhood and the railroads of the United States, including Santa Fe.
 
 
 4
 On November 2, 1959, substantially all of the nation's railroads including Santa Fe, served on the labor organizations representing their operating employees, hereinafter referred to as 'the operating brotherhoods,' including the Grievance Committee, certain notices under said section 6, seeking extensive changes in the work rules and pay structures of the operating employees. Thereupon negotiations with the operating brotherhoods on some of the individual properties of the railroads concerned were unsuccessful. On or about October 28, 1959, Santa Fe had authorized the Western Carriers' Conference Committee to represent it in either regional or national conferences.
 
 
 5
 From July 26, 1960 through August 12, 1960, conferences with the Grievance Committee were held on the property of Santa Fe regarding the notice of September 28, 1956 and the Santa fe's counterproposals.
 
 
 6
 In August, 1960, the Grievance Committee, in the dispute over its 1956 notice, invoked the jurisdiction of the National Mediation Board, which docketed the case as A-6318 on August 25, 1960.
 
 
 7
 On or about September 7, 1960, at the request of the operating brotherhoods, including defendant brotherhood, substantially all of the nation's railroads, including Santa Fe, agreed to waive local handling of the issues raised in the operating brotherhoods' notices of the same date, to permit joint handling of those issues on a national level with the issues being handled on a national level growing out of the carriers' notices of November 2, 1959.
 
 
 8
 On May 15, 1961, certain of the issues involved in the 1956 notice were compromised and settled and became part of the schedule of the road and yard employees of Santa Fe's Eastern and Western Lines.
 
 
 9
 A statement of the history of the issues in the national case appears in our opinion in Brotherhood of Locomotive Engineers v. Baltimore and Ohio R. Co., 7 Cir., 310 F.2d 503 (1962), affirmed 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed.2d 759.
 
 
 10
 The proposed requests for a revision of the yard and road schedules of the employees represented by the Committee, from its 1856 notice to Santa Fe, which remain pending, relate to matters which are the subject of current custom and practice on Santa Fe, are the subject of awards of the First Division of the National Railroad Adjustment Board on Santa Fe, and are the subject of various agreements on Santa Fe. None of the pending 1956 demands is identical to the report of the Presidential Railroad Commission, the carriers' notice of November 2, 1959, or the brotherhoods' counterproposals of September 7, 1960, as supplemented. In the case at bar, the pending 1956 proposals of the Committee are, for the most part, similar in subject to those matters involved in the national case.
 
 
 11
 We take note of the fact that counsel are not in disagreement that, of 68 unsettled 1956 issues, 59 are within the scope of the issues on which bargaining is continuing in the national case.
 
 
 12
 Defendants contend that this appeal has been rendered moot by the passage by Congress of Public Law 88-108, 77 Stat. 132, which was approved August 28, 1963. This is a joint resolution whose express purpose is 'To provide for the settlement of the labor dispute between certain carriers by railroad and certain of their employees (the national case).'
 
 
 13
 Defendants have filed a formal motion to dismiss this appeal, as well as No. 14162, 7 Cir., 324 F.2d 902.[1] They urge that Public Law 88-108 imposes a prohibition of any change, except by agreement or pursuant to an arbitration award as provided therein, in the rates of pay, rules or working conditions encompassed by the national railroad notice of November 2, 1959 or by the operating union national notice of September 7, 1960. Defendants further urge (1) that the major thrust of plaintiff's appeal is that it is unlawful for defendants to strike over matters 'within the scope of' national notices and (2) that any such principle of law, if established, would already be established by virtue of the provisions of the said Public Law.
 
 
 14
 Plaintiff replies to this argument based on Public Law 88-108, by emphasizing that a strike by defendants on the 59 unsettled 1956 issues (as to which the statute has, according to plaintiff, directed the parties to continue negotiations), is proscribed but only until on or about February 24, 1964. It insists that the present controversy over the disposition of the 59 issues remaining unsettled from 1956 'continue(s) very much alive albeit temporarily dormant'. Prophetically it adds that, on or about February 25, 1964, it is entirely possible-- indeed likely-- that the parties will be right back where they were on September 25, 1962 when defendants issued the call to strike plaintiff.
 
 
 15
 When the national case was before us, we reminded the litigants that they were dealing with properties impressed with a public interest and that the public might resort to Congress for relief. 310 F.2d 503, 513. Congress has acted and as a result we have Public Law 88-108, which in effect provides that no carrier which served the notices of November 2, 1959, and no labor organization which received such notices or served the labor organization notices of September 7, 1960, shall make any change except by agreement, or pursuant to an arbitration award as in the joint resolution provided, in rates of pay, rules, or working conditions encompassed by any of such notices, or engage in any strike or lockout over any dispute arising from any of such notices.
 
 
 16
 Because of the circumstances surrounding this case, we base our decision, not upon the ground of mootness, but on our abstention from exercising our jurisdiction during the period required by Public Law 88-108 for the operation of the plan of disposition of the national case. We do this is contemplation of the fact that the unsettled 1956 issues involved in the case at bar are within the scope of the issues on which bargaining is continuing in the national case. Whether our action is based upon comity with the legislative branch of government or a realization of the practicalities of the situation is not important. For either or both reasons, an adjudication by a federal court in this case before the expiration of 180 days after the enactment of Public Law 88-108 on August 28, 1963, would be disruptive and therefore an interference with the operation of the legislative plan. Therefore we choose to abstain from granting relief.
 
 
 17
 The doctrine of abstention by the federal courts has been sanctioned in several cases in which a question arose as to the determination of pertinent state law. Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971; Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; and Government and Civic Employees Organizing Committee, C.I.O. v. Windsor, 116 F.Supp. 354, affirmed 347 U.S. 901, 74 S.Ct. 429, 98 L.Ed. 1061.
 
 
 18
 In Railroad Commission of Texas v. Pullman Co., 312 U.S. at 501, 61 S.Ct. at 645-646, 85 L.Ed. 971, the court refers to the doctrine of abstention, thus:
 
 
 19
 '* * * whereby the federal courts, 'exercising wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. * * * This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restruction of those powers. * * *'
 
 
 20
 In the case at bar it is hoped that our voluntary abstention furthers the harmonious relationship between the federal courts and Congress.
 
 
 21
 Accorldingly the motion of defendants to dismiss this appeal, for the reason that it is moot, is denied, but said motion is granted on the ground of abstention as hereinbefore set forth, all without prejudice, and with leave to either party to move to reinstate this appeal after February 24, 1964, and the mandate of this court shall not issue until after said February 24, 1964.
 
 
 22
 Appeal dismissed, without prejudice, etc.
 
 
 
 [1]
 No. 14162 is an appeal by the same plaintiff as No. 14085, and involves a denial by the district court of plaintiff's prayer for injunction pending an appeal, pursuant to 28 U.S.C.A. Rule 62(c)