Vincent A. CATOGGIO, individually and as Executor and Trustee of the Estate of Vincent A. Catoggio, Sr., deceased, Plaintiff,

v.

John J. GROGAN, Mayor and Louis De-Pascale, Chairman of the City Council of the City of Hoboken, New Jersey, and City Councilmen Stephen E. Mongiello, Edward J. Borrone, Loretta Haack, Edward J. Murnane, Thomas J. Turso, Thomas O'Reilly, Joseph Bartletta, Louis Francone and Dominick R. Rinaldi, Director of Rent Control, Defendants.

Civ. A. No. 2-57.

United States District Court
D. New Jersey.
March 4, 1957.

Chandless, Weller & Kramer, Ralph W. Chandless, Hackensack, N. J., for plaintiff.

Charles De Fazio, Jr., Hoboken, N. J., for defendants.

HARTSHORNE, District Judge.

Plaintiff, a landlord in Hoboken, New Jersey, though a resident of New York, here seeks from this Court a declaratory judgment, 28 U.S.C.A. §§ 2201, 2202 that the Rent Control Ordinance now in effect in the City of Hoboken is invalid, in that it takes his property without due process of law, contrary to the provisions of the Fourteenth Amendment to the United States Constitution, and in violation of the Civil Rights Acts, 42 U.S.C.A. § 1983, 28 U.S.C.A. § 1343(3). Plaintiff further seeks an injunction against the defendant officials of the City of Hoboken, to prevent them from enforcing this ordinance against him by lowering his rents. His specific claim as to the illegality of the ordinance, and the order thereunder lowering his rents, is that the ordinance allegedly gives him no right to a hearing before the rent order is entered, and assures him of no such right at all, since the hearing provided for is to be one "in the discretion of the Director". These

claims obviously require an interpretation of the ordinance.

Plaintiff does not ask this Court to hold the ordinance invalid on the ground that it was beyond the power of the municipality to enact it—a question purely of State law, on which the decision of the State courts is final, and this despite the fact that previous to filing his complaint, a decision had been rendered in one of the State courts to that very effect, as to the Rent Control Ordinance of the City of Bayonne based on the State Home Rule Act, N.J.R.S. 40:48–2, N.J. S.A., as was the Hoboken ordinance. Grofo Realty v. Bayonne, N.J.Super. Court (Law Div.1956, unreported.) Plaintiff frankly admits that he did not attack the Rent Control orders of which he now complains on this last ground, for the reason that, had he done so, this Court, under the so-called Pullman doctrine, Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, would have stayed its hand, till after plaintiff had resorted to the State courts to obtain their final determination of this purely State question.

The further fact must be borne in mind that this question of Rent Control has probably been the subject of as much consideration by both the Courts and the Legislature of the State of New Jersey during recent years as has any other single question of State policy and law. In addition, almost concurrently with the above State Court decision in the Bayonne Rent Control case, another State Court, on a parity therewith, rendered a decision essentially, if not exactly to the contrary of the decision in the Bayonne case. Wagner v. Mayor and Municipal Council of City of Newark, 1956, 42 N.J. Super. 193, 126 A.2d 71. Specifically, in the Newark case the Court held, among other things, that the above New Jersey Home Rule Act, on which the Hoboken ordinance is admittedly based, constituted a valid legal basis for the Newark Rent Control Ordinance, while the above Bayonne decision held in part that the enactment of the 1956 Rent Control statute,.

Chapter 146 of the Laws of 1956, N.J. S.A. 2A:42–56 et seq., impliedly repealed the provisions of the above Home Rule Act authorizing Rent Control. If so, the Hoboken ordinance here in question would be illegal. Faced with these conflicting decisions of the lower State courts, prompt appeals were taken from both to the Appellate Division of the State Superior Court. But such is the public importance of the matter, particularly in view of this conflict of decision, that the highest State Court, the New Jersey Supreme Court, would seem apt to certify these two appeals to itself for direct final decision, with the expedition for which the New Jersey courts are noted.[1]

That both plaintiff and defendant herein were fully acquainted with this situation before the complaint herein was filed, is clearly indicated by the fact that plaintiff, in his briefs, alludes to the fact that defendant City of Hoboken appeared as amicus curiae in the above Newark case, where it contended that the Newark, and consequently the present Hoboken, ordinance had a valid basis in the above Home Rule Act. It is thus clear that plaintiff here has voluntarily omitted to base his contention that the lowering of his rents, the gist of his action, was invalid because beyond the Rent Control powers of the City of Hoboken, and this for the purpose of hoping to force this Federal Court to decide his case, without applying the *Pullman* doctrine of staying the proceedings here, to permit the State Courts to finally decide the purely State question here involved.

 The first question thus is, whether a suitor has the right to compel a Federal Court to disregard the *Pullman* doctrine by simply failing to allege facts known to exist, upon which the application of the *Pullman* doctrine depends. To have such a result ensue would indeed require that justice be "blind", and not as to the parties—the usual connotation—but as to the requirements of justice itself. As the Supreme Court said in Spector Motor Service v. McLaughlin, 1944, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101, "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality * * * unless such adjudication is unavoidable."

The essence of the *Pullman* doctrine is not as to the jurisdiction or power of the Federal Courts, but as to the sound judicial discretion with which such jurisdiction or power is to be exercised. Indeed, no factor could have greater weight with such judicial discretion than the Federal courts' "scrupulous regard for the rightful independence of the State governments", the prime criterion with which the *Pullman* doctrine is concerned. Specifically, in *Pullman*, the United States Supreme Court said, 312 U.S. at page 500, 61 S.Ct. at page 645:

"Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies * * * or the final authority of a state court to interpret doubtful regulatory laws of the state. [Citations] These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. [Citations] * * *."

Similarly in Spector, supra, 323 U.S. at page 105, 65 S.Ct. at page 154, the Court said:

" * * * And so, as questions of federal constitutional power have become more and more intertwined with preliminary doubts about local law, we have insisted that federal courts do not decide questions of constitutionality on the basis of pre-

---

1. Since the rendering of the above decision, the New Jersey Supreme Court has certified these two appeals.

liminary guesses regarding local law. [Citations] Avoidance of such guesswork, by holding the litigation in the federal courts until definite determinations on local law are made by the state courts, merely heeds this time-honored canon of constitutional adjudication."

To multiply authorities is unnecessary. Indeed, the *Pullman* doctrine has been applied by the United States Supreme Court as recently as January 1957, in the case of Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267. But of particular interest might be the case of City of Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355, which, as here, involved the validity of a city ordinance, and where, as here, a State court already had pending before it, not a case between the same parties, but a case involving substantially the same question. There, applying the *Pullman* doctrine, our highest court reversed the action of the lower Federal Courts in attempting to decide the State law question as to the validity of the ordinance in the light of a State statute, and directed the Federal District Court to "retain the bill pending a determination of proceedings in the state court * * *", 316 U.S. at page 173, 62 S.Ct. at page 988. The Court there added, 316 U.S. at page 172, 62 S.Ct. at page 988:

> "The delicacy of that issue and an appropriate regard 'for the rightful independence of State governments' * * * reemphasize that it is a wise and permissible policy for the federal chancellor to stay his hand in absence of an authoritative and controlling determination by the state tribunals * * *. In this case that discretion calls for a remission of the parties to the state courts, which alone can give a definitive answer to the major questions posed * * *. Considerations of delay, inconvenience, and cost to the parties, which have been urged upon us do not call for a different result. For we are here concerned with the much larg-

er issue as to the appropriate relationship between federal and state authorities functioning as a harmonious whole."

■ Because of the supreme importance of harmony between our Federal and State sovereignties, because of the fact that this harmony is to be obtained solely through the exercise of sound judicial discretion, it is the duty of the courts themselves, ex mero motu, to consider the situation as it exists in fact, whether or not either party stresses a particular point. For a Federal Court not to refuse to exercise its jurisdiction and power, but simply to stay its hand temporarily pending more appropriate determination of a certain issue elsewhere, is surely a small price for a party to pay, in order to avoid unhappy, not to say unnecessary, conflict between the Federal and State sovereignties.

■ True, no such stay on the part of the Federal Courts is appropriate where the adequacy of the relief in the State courts is subject to real question, as in Hillsborough Tp. Somerset County v. Cromwell, 1946, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 and in the recent desegregation cases, as well probably as in Lane v. Wilson, 1939, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, where the right of a colored man to vote in Oklahoma was involved. Similar is the situation where, instead of the State question being subject to real doubt, this question has been definitively decided. For under such circumstances, the possibility of conflict between the sovereignties does not exist, and the Federal Court can promptly apply the settled State law and thereupon proceed, if necessary, to adjudicate the remaining Federal constitutional issue. *Hillsborough*, supra. Most of the decisions relied on by plaintiff, in asking this Court to proceed without staying its hand, fall into one or another of the above categories and are therefore inapplicable here.

■ Great stress, however, is laid by plaintiff on the fact that in the case at bar a violation of the Civil Rights Acts

are involved, the claim being that while the *Pullman* doctrine may apply generally as above, it does not apply in cases arising under the Civil Rights Act, as instanced by Hague v. C. I. O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. This contention is incorrect. Ever since the decision in *Pullman*, its doctrine has been applied, not only generally, but in cases expressly based upon the Civil Rights statute. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119. The fact is, that *Hague* was decided before *Pullman*, i. e., before the *Pullman* doctrine had been developed as a criterion for the exercise of sound judicial discretion by the Federal Courts, in maintaining the necessary harmony between the Federal and State sovereignties. Indeed, this also applies to Lane v. Wilson, supra.

Finally it should be noted that if we pierce the shadow and seize the substance, as the U. S. Supreme Court doubtless did, *Pullman* itself was a case involving the right of employment of colored Pullman porters, whose civil rights of employment, of voting and so on, were the very cause for the enactment of the Civil Rights statutes.

In short, not only the discretion vested in the Federal Courts in declaratory judgment proceedings, the general equitable discretion vested in the Federal Chancellor in granting injunctive relief, but finally the paramount need for maintaining harmonious relations between the Federal and State sovereignties, all conjoin here to require, not that this Court refuse to exercise its jurisdiction and power in the present instance, but that it stay its hand in doing so, pending, not the possible, but the imminent and final, decision of the important State question, which may well be decisive of the entire controversy now before this Court.

That plaintiff may have resort to the State Courts at once, himself, is obvious, as is also the fact that his claimed loss of a few hundred dollars in lessened rents does not constitute irreparable harm requiring immediate injunctive relief. Perhaps it should be added that since what is involved here is a municipal ordinance, not a statewide statute, defendant's motion to convene a three-Judge Court will be denied. City of Cleveland v. United States, 1945, 323 U. S. 329, 65 S.Ct. 280, 89 L.Ed. 274.

An order may be entered, on notice, accordingly.