The PARKER PEN COMPANY,
Plaintiff,

v.

DART DRUG COMPANY, Inc.,
Defendant.

No. C–164–WS–60.

United States District Court
M. D. North Carolina,
Greensboro Division.

Feb. 8, 1962.

Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., George M. Chapman, Charles D. Snead, Jr., New York City, for plaintiff.

Wesley Bailey, Clyde C. Randolph, Jr., Winston-Salem, N. C., for defendant.

L. RICHARDSON PREYER, District Judge.

This is an action by the Parker Pen Company for an injunction against the defendant Dart Drug Co. Suit was brought under the North Carolina Fair Trade Act (General Statutes of North Carolina, § 66–52 et seq.), and the Federal Miller-Tydings Act (15 U.S.C.A. § 1 et seq.), and the McGuire Act (15 U.S. C.A. § 45). Plaintiff, the manufacturer of a line of writing instruments, seeks to enjoin the defendant from cutting the prices of its trade-marked products.

The agreed statement of facts indicates that plaintiff has qualified under

the North Carolina Fair Trade Act and has established minimum prices for the resale of its products. It has entered into Fair Trade contracts with some 653 retailers of North Carolina. Defendant operates a discount type retail drug business in the City of Winston-Salem. It has not signed a Fair Trade contract with plaintiff and is not a franchise dealer of the plaintiff. In other words, this case involves the "nonsigner" provision of the North Carolina Fair Trade law. It is admitted that defendant has offered the products of the plaintiff for sale at less than the established prices and that this constitutes a violation of the North Carolina Fair Trade Act, if that Act is constitutional.

The parties are agreed that the only questions before the court in this action are the validity of the North Carolina Fair Trade Act, The Miller-Tydings Act, and the McGuire Act.[1] The defendant contends that these acts violate both the North Carolina Constitution and the Constitution of the United States in a number of respects and must be held invalid.

█ At the outset, defendant confronts a lion in the path in the form of decisions squarely holding each of the acts he attacks to be constitutional. The Supreme Court of North Carolina has held the North Carolina Fair Trade Act to be valid under the North Carolina Constitution in Eli Lilly & Company v. Saunders, 216 N.C. 163, 4 S.E.2d 528, 125 A.L.R. 1308 (1939). Lilly also involved a defendant who had not signed a fair trade contract, and there appears to be no way of distinguishing it from the present case. The Supreme Court of North Carolina has the final author-ity to determine whether or not an Act of the General Assembly is valid or invalid under the Constitution of the State of North Carolina, and its determination is binding on the Federal Courts.

The validity under the Constitution of the United States of a substantially identical Fair Trade Act (Illinois) was confirmed by the Supreme Court of the United States in Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109 (1936). The constitutionality of the McGuire Act was confirmed in Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 5th Cir., 205 F.2d 788 (1953) certiorari denied, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369 (1953).

From the foregoing decisions, it is clear that the question of the validity of the North Carolina Fair Trade Act under the State and Federal Constitutions is not open. Neither is the constitutionality of the McGuire Act. Defendant, in a thorough and learned brief, analyzes these decisions that have held in favor of constitutionality, finds them wanting, and asks this court to disregard them. To fail to do so, defendant suggests, is to "perpetrate total abdication of their [the courts] power of reason in favor of the doctrine of *stare decisis*."[2] But surely a lower federal court does not have this freedom. "The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles."[3] That a lower court should follow existing precedent in decisions of a higher

1. A brief allusion to the historical development of Fair Trade Acts may serve to explain the place of the Miller-Tydings Act and the McGuire Act in the case. The Miller-Tydings Act amended the Sherman Act by validating resale price maintenance contracts in interstate commerce, thus placing them beyond the sanctions of the Sherman Anti-Trust Act. It was thought that the amendment affected nonsigners as well as signers; however, the Supreme Court in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) decided that the Miller-Tydings Act applied only to consensual contracts and not to nonsigner provisions. In 1952, the McGuire Act specifically exempted nonsigner provisions from the Sherman Act.

2. Defendant's brief, p. 43.

3. Cardozo, The Nature of the Judicial Process, note 32, at 141 (1921).

court in the absence of overriding factors is surely one of the most sacred.

Defendant also invites us to restudy the economic foundations of Fair Trade legislation. He argues that the Fair Trade Acts were spawned by the conditions of the depression and that "there is a rapidly rising tide of judicial opinion "[4] in opposition to them in our present age of affluence. Defendant points out that the North Carolina decision upholding the constitutionality of the act was entered at a time when there were no decisions holding such acts unconstitutional, but that since this decision some 20 state courts have held the acts unconstitutional while approximately 18 have upheld the acts.

We think, however, that the legislature is better fitted to resolve the economic issues involved than the courts. As stated in Eli Lilly & Company v. Saunders, supra, 216 N.C. at page 181 and 182, 4 S.E.2d at page 540, the courts have "nothing to do with the expediency of an economic experiment." The courts' concern is with the question of whether the legislature had the power under the constitution to pass such an act, not with its wisdom. We make no effort to determine the correctness of the economic arguments advanced by the defendant. We think that until the cases cited above are overruled they remain the law and are clearly controlling on this court.

Defendant advances an alternative ground for denying the injunction requested by plaintiff. In its brief defendant phrases the question involved as follows: "Should a United States District Court, in the exercise of its equity jurisdiction, be called upon to enforce the terms of a state law the constitutionality of which is in grave doubt?" That is, defendant further contends that even if this court is bound as a matter of law by the prior decisions determining constitutionality, it should abstain from the exercise of jurisdiction. The defendant invokes the doctrine of equitable abstention and suggests specifically that under the circumstances, and in the exercise of the court's general equitable powers, the court should retain this case on the docket and allow plaintiff 20 days in which to commence an action in the state court. This procedure would allow defendant the opportunity of contesting the constitutionality of the North Carolina Fair Trade Act in the North Carolina courts. Defendant cites as precedent for this procedure the cases of Union Carbide & Carbon Co. v. White River Distributors, Inc., E.D.Ark., 118 F.Supp. 541 (1954); Sterling Drug Co., Inc. v. Anderson, E.D.Tenn., 127 F.Supp. 511 (1954); Upjohn Co. v. Peoples Service Drug Stores, Inc., D.C.Md., 173 F. Supp. 434 (1959) and Bulova Watch Co. v. Rogers-Kent, Inc., E.D.S.C., 181 F. Supp. 340 (1960). This procedure should be followed, the defendant argues, because serious doubt exists as to the constitutional validity of North Carolina's Fair Trade Act. Defendant discovers this serious doubt in several factors: the historical setting of the decision in the Lilly case, (mentioned above); the strong dissenting opinion written in that case by the then Chief Justice; and the fact that in the most recent case dealing with the validity of the North Carolina Fair Trade Act, the Attorney General of North Carolina appeared as amicus curiae and requested the court to re-examine the constitutional basis of the Lilly case. Union Carbide & Carbon Corp. v. Davis, 253 N.C. 324, 116 S.E.2d 792 (1960). In this action, a North Carolina Superior Court dissolved a temporary restraining order issued in plaintiff's favor on the grounds that the North Carolina Fair Trade Act was unconstitutional. On appeal the Supreme Court of North Carolina held that the constitutionality of the Fair Trade Act could not be decided properly upon a motion for temporary injunction. The cause was remanded to the Superior Court of Forsyth County for hearing on the question of whether the temporary order should be continued to final

4. Defendant's brief, p. 11.

hearing. Apparently no further hearings were ever held in this cause. There is nothing to indicate that another appeal to the North Carolina Supreme Court is contemplated. While the defendant contends that this decision indicates uncertainty concerning the constitutionality of the North Carolina Fair Trade Act, this argument is a two-edged sword and is equally susceptible of the interpretation that the North Carolina Supreme Court has declined to change its position.

The situation here seems quite different from the cases cited by the defendant in which the technique of abstention in deciding questions of State Constitutional Law was employed. At the time of the Union Carbide & Carbon Co. v. White River Distributors, Inc. case, the Sterling Drug case, and the Bulova Watch case, the constitutionality of the Fair Trade Acts of Arkansas, Tennessee, and South Carolina had not been passed on by the courts of last resort of the respective states. In the Upjohn case the defendant was giving trading stamps and the question of whether the giving of trading stamps was a violation of the State statutes had not been determined by the State court although the Fair Trade Act has been held to be constitutional. In these cases the courts very properly did not wish to anticipate how the state court would construe the State statutes and sent the parties to the state court for the construction.

In the instant case, the constitutional question has been settled by the court of last resort in the Lilly case. Plaintiff has the right to expect this court to apply the state law. "For federal court to stay its hand temporarily pending determination in state court is inappropriate, where adequacy of relief in state courts is subject to real question, or where the state question has been definitely decided and federal court can promptly apply the settled state law and thereupon adjudicate the remaining federal constitutional issue. Catoggio v. Grogan, D.C.N.J.1957, 149 F.Supp. 94." Barron and Holtzoff, Federal Practice and Procedure, § 64, footnote ,59. Here the state law is settled and may be promptly applied. To decline to do so on the supposition that the North Carolina Supreme Court may reverse itself would be a license to ignore all state court decisions, provided they were controversial or close cases. While some general uncertainty may exist as to the North Carolina Fair Trade Act, we do not think that it is the kind of uncertainty which can be given effect in a court of law under the doctrine of abstention. Rather, it is such doubt as is inherent in a subject like fair trade legislation which generates general social and economic discussion. To apply the doctrine of equitable abstention to the situation of this case where there is a settled state court ruling would be to go beyond any previous application of the doctrine that we are familiar with. We find no basis for abstaining from applying the Act and enjoining the defendant from the practices which are injuring the plaintiff. For the foregoing reasons, the preliminary injunction will be made permanent.

### CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this action and of the parties and has jurisdiction to grant injunctive relief.

2. Defendant, in offering for sale and selling at prices below the minimum retail prices stipulated in plaintiff's Fair Trade contracts, violated the North Carolina Fair Trade Act.

3. By reason of the foregoing violation plaintiff has been and will be irreparably injured unless restrained from such further acts.

4. The North Carolina Fair Trade Act is valid under the North Carolina Constitution and the Constitution of the United States.

5. Plaintiff has no adequate remedy of law.

6. Plaintiff is entitled to a permanent injunction.