**Jesse V. ALCALA, Plaintiff,**

**v.**

**The WYOMING STATE BOARD OF BARBER EXAMINERS et al., Defendants.**

**Civ. No. 5851.**

United States District Court, District of Wyoming.

Nov. 1, 1973.

John E. Stanfield of Smith, Stanfield & Mendicino, Laramie, Wyo., for plaintiff.

Frederic C. Reed, Asst. Atty. Gen. of Wyo., Cheyenne, Wyo., for defendants.

Before PICKETT, Senior Circuit Judge, BARRETT, Circuit Judge, and KERR, District Judge.

KERR, District Judge.

Plaintiff, pursuant to 28 U.S.C. §§ 2201–2202 (1964), brings this action seeking to have Ch. 67 § 12, Wyoming Session Laws, 1931, declared unconstitutional, which allegedly precludes the defendant Board of Barber Examiners from issuing plaintiff a barber's license. Plaintiff seeks to have the Court exercise its jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C.A. § 1983. On request by the plaintiff, a three-judge court was convened. 28 U.S.C. § 2284.

The essential facts are not in dispute, having been admitted in the pleadings or established by stipulation. Plaintiff, in 1970, was convicted of manslaughter, a felony, in the District Court for Laramie County, Wyoming. At the time of his conviction plaintiff was self-employed as a barber, holding a valid Wyoming barber's license. On appeal, the Wyoming Supreme Court affirmed the conviction. Alcala v. State, 487 P.2d 448 (Wyo.Sup.Ct.1971). The United States Supreme Court denied certiorari. Alcala v. Wyoming, cert. denied, 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466 (1972). During this period of approximately two years plaintiff continued to work as a barber. Following exhaustion of his right of appeal, plaintiff was incarcerated in the Wyoming State Penitentiary in April, 1972, to begin serving his sentence. On June 30, 1972, his Wyoming barber's license expired.

Some six months after expiration of his license, plaintiff initiated procedures to have it renewed. The Secretary of the Board of Barber Examiners by letter dated January 22, 1973, informed plaintiff that Ch. 67 § 12 (compiled at § 33–95, Wyoming Statutes, 1957, and here-

inafter referred to as § 33–95), barred any renewal of the expired license. Section 33–95 reads:

> "After the passage of this Act, the Board *shall* refuse to issue or renew, and *shall* revoke, any certificate of registration for any of the following causes: 1. Conviction of a felony". (emphasis supplied).

Section 33–95 of the Wyoming Compiled Statutes, 1957, substituted the word "may" for the mandatory "shall", as provided in the original Session Law. By stipulation of the parties, and by research, it is clear that the original enactment must prevail over the erroneous compilation. See Ch. 154 § 2, Wyoming Session Laws, 1945; Fidelity and Columbia Trust Co. v. Meek, 294 Ky. 122, 171 S.W.2d 41 (Ct.App.Ky.1943); 1A Sutherland, Statutory Construction § 28.04.

Prior to denial of renewal of plaintiff's license, no hearing was held by the Board. Such hearing was deemed to be futile and any consideration of the case, under the law, to be prohibited. See Wyoming Administrative Procedure Act, § 9–276.19 et seq. (1973). Plaintiff did not seek review of the denial in the state courts as provided by the Wyoming Administrative Procedure Act. Id., at § 9–276.32.

When plaintiff brought this action he was incarcerated within the physical confines of the penitentiary. Since that time plaintiff has been placed on a so-called "work-release" program. The exact nature and status of this program is not entirely clear. Apparently inmates are selected at the discretion of the Warden and placed in gainful employment in various towns in Wyoming. These inmates are still serving their sentence, even though they are not restricted to the physical confines of the penitentiary. Suffice it to say that the manner of selection of inmates, standards of guidelines to be followed by the inmates, effect of misbehavior on the inmate's previously imposed sentence are among various facets of this program

which remain unsettled in the minds of the court. Plaintiff is working as an automobile body repairman and apparently would be placed as a barber but for the fact that he does not have a valid Wyoming barber's license. The record does not reveal, and the parties do not claim, that plaintiff has a right to remain in the work-release program.

Plaintiff challenges § 33–95 with its mandatory language, as being facially unconstitutional in that it violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiff also alleges that the statute constitutes cruel and unusual punishment under the Constitution of the United States. The Board, through the office of the Attorney General for Wyoming, denies that the statute is an irrational classification, or that it violates the provisos of the United States Constitution, and affirmatively alleges that the statute is a valid exercise of the state's police power. In short, it appears that this suit would not be here if the statute under attack, § 33–95, were to read *"may* refuse to issue or renew", instead of as it in fact reads, "[S]hall refuse to issue or renew . . ." (emphasis supplied). The statute has never been construed or interpreted by the Wyoming State Courts.

The Court, in listening to and considering this case, is faced with a threshold question: Assuming that the Federal court has jurisdiction, should it, as a matter of sound equitable discretion, exercise that jurisdiction in the present matter? Accord, Burford v. Sun Oil Co., 319 U.S. 315, 318, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The question merely asks in another form, whether a federal court should exercise its power of abstention. Tied inextricably to the question, and necessitating our consideration, is the matter of plaintiff's "standing", infra. The doctrine of abstention was first approved and applied in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The policies underlining

the doctrine there approved were that federal courts should avoid deciding state issues; that state courts might resolve the case in a manner that would avert the need for reaching the federal constitutional claims; and that abstention would avoid any friction with the delicate balance of federal-state relationships.

Abstention is a collection of formalized principles of federal judicial restraint; it "sanctions escape from immediate decision only in narrowly limited special circumstances". e. g., Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949). Its invocation rests within the Court's discretionary exercise of its equitable powers. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1969). These special circumstances are sufficient justification for the additional delay and expense to which application of the abstention doctrine inevitably gives rise. See Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L. Ed.2d 257 (1971); England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). These "special circumstances" demonstrate a need for federal courts to "[R]estrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary . . ." Railroad Commission v. Pullman Co., supra, at 501 of 312 U.S., at 645 of 61 S.Ct.

"Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication . . . The doctrine . . . contemplates that deference to state court adjudication . . . be made." Harman v. Fors-

senius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965).

The Court is persuaded that the case at bar presents substantial questions of unsettled state law, resolution of which could conceivably make any decision on the federal constitutional claims unnecessary. The program here involved, a "work-release" program, is substantially different from the concept of parole and probation so as to make comparison difficult. It appears to be an act of grace on the part of the Warden of the penitentiary whether an inmate is placed on "work-release". See Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1934). The program has no statutory authority, being solely an experimental program developed at the discretion of penal authorities. It is uncertain what standards the inmate must achieve in order to qualify for the program; likewise, it is unclear what an inmate must do to retain this status, once granted leave to be on the program. In short, participation in the program appears to be a "favor" or "indulgence" granted by the Warden. In such a case as we have here this Court "[S]hould hold its hand, lest it render a constitutional decision unnecessarily." Reetz v. Bozanich, 397 U.S. 82, 85, 90 S. Ct. 788, 790, 25 L.Ed.2d 68 (1970). Indeed, plaintiff's indefinite status, and that he is still in fact incarcerated, could transform any decision merely into an advisory opinion.

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining . . . whether there is . . . a controversy. Basically, the question . . . is whether . . . there is a substantial controversy, between parties having adverse legal interests, of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal

and Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L.Ed. 826 (1940). (emphasis supplied)

A case or controversy must admit of specific relief, as distinguished from an advisory opinion on matters not ripe for decision. See Hurst v. United States, 203 F.2d 710 (10th Cir. 1953); Rozelle v. Quinn, 47 F.Supp. 740 (S.D.Cal.1942). Due to the muddled status of plaintiff, it would appear that there is some doubt as to "immediacy" of plaintiff's danger and the "directness" of any injury he might incur. See Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). In addition, there remain some questions as to the effect of the Wyoming Administrative Procedure Act, § 9–276.19 et. seq., upon the mandatory terms of the statute, § 33–95, here in question.

▇ It is clear that administrative agencies are competent to pass upon constitutional issues germane to proceedings before them. Indeed, such action is necessary so as to better focus the issues for judicial review, if such action is later necessary. In the present case, the Board never fully considered the constitutional issues, nor did they hold a full scale hearing, relating to the statute under attack.

It is thus apparent that although the statute under attack may not be ambiguous or uncertain, the fact that it has never been construed by the courts of Wyoming and the many corollary questions which might render an opinion merely advisory in nature, leads this Court, at this time, in the exercise of its sound judicial discretion, to abstain from deciding the constitutionality of the statute.

It has been held that the federal court should stay its hand even though not requested to by a litigant and that complainant cannot avoid the invocation of the doctrine by failing to allege that the law, the constitutionality of which is attacked, is invalid under state law. See Catoggio v. Grogan, 149 F.Supp. 94 (D. C.N.J.1957); Pierce v. Hildebrand, 103 F.Supp. 396 (S.D.Ia.1952). It is conceivable that a definitive opinion by the state courts on some of the questions expressed herein could render a decision on the federal claim unnecessary. The facts are not in controversy so that no undue delay would result; and in any case, state courts have the solemn duty, equally with the federal courts, to guard, enforce and protect every right granted or secured by the Constitution of the United States. See e. g., Robb v. Connolly, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542 (1884).

This memorandum constitutes the Findings of Fact and Conclusions of Law and no additional findings or conclusions are necessary.

An order of abstention will be entered and the proceedings stayed to afford plaintiff an opportunity to exhaust his state remedies. If, after a period of ninety (90) days, plaintiff has failed to proceed, either before the administrative body or the courts of this state, an order will be entered dismissing the complaint without prejudice. See American Trial Lawyers Assn., New Jersey Branch v. New Jersey Supreme Court, 409 U.S. 467, 469, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973).

BARRETT, Circuit Judge (specially concurring in the result):

I specially concur in the *result* relating to the specific relief afforded in my Brother Kerr's opinion. I have no personal philosophical disagreement with the reasons stated by Judge Kerr for application of the abstention doctrine. I firmly and personally believe that state courts should not only construe and interpret state statutes and regulations, if necessary, but further that they should, as a matter of comity in recognition of good federal-state relationships, first pass upon all constitutional issues raised in relation to their state statutes and regulations and the actions of state officials taken thereunder. However, I do not believe that the present state of federal law permits us to abstain unless the statute requires construction and/or in-

terpretation. Such does not appear to be the case in relation to the Wyoming barber registration statute at issue here.

Neither of the parties contend that the challenged state barber registration statute is ambiguous or uncertain. It is not. Plainly, it is mandatory that the Wyoming State Board of Barber Examiners refuse to renew the barber license of one convicted of a felony. Accordingly, there can be no question, in my opinion, that the constitutional issues raised by Alcala are substantial and are not frivolous. They do involve important state functions and considerations. We must bear in mind that the action before us is brought under 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983 of the Civil Rights Act for *declaratory judgment,* to-wit, that the state statute is unconstitutional. If no question of Alcala's *standing* to sue concerned me, I would be hard pressed to hold, lacking ambiguity in the challenged statute, that there is not concurrent jurisdiction between state and federal courts involving the federal constitutional issue adjudication. However, it is fundamental—as pointed out in Judge Kerr's opinion—that one seeking *declaratory judgment* relief must allege and prove that the harm he is suffering from the alleged unconstitutional deprivation is both *immediate* and *irreparable.* Alcala has not established such proof in the case at bar. There can be no question from this record that: (1) Alcala is presently on the "work release" program, although not "working" in his capacity as a barber; (2) Alcala is in every sense of the word a prisoner of the Wyoming State Penitentiary notwithstanding the fact that he is on the "work release" program, and that he is serving his sentence; (3) the "work release" program in effect at the Wyoming State Penitentiary has no statutory or regulatory genesis and is "operated' at the sole discretion of the Warden, who may grant or revoke the "work release" status at will; and (4) those on the "work release" program are neither on probation nor parole and, accordingly, are not entitled to any notice or hearing should they be withdrawn from the program for whatever reason by the Warden.

Neither party has seen fit to enlighten this court with respect to the origin, basis, authorization or operation of the "work release" program beyond the fact that such a program exists and that those inmates selected by the *Warden* to participate in it are at all times, while so participating, prisoners serving their sentences *as if* actually incarcerated in the penitentiary at Rawlins, Wyoming, and that their status may be withdrawn as participants at the sole will or whim of the Warden. Given this background —and nothing more—by the parties, it means nothing to me that the Warden in particular and apparently the Attorney General would readily place Alcala in a barbering position on "work release" were it not for the prohibition contained in the barbering statute denying such action because Alcala is a convicted felon. I doubt that either the Warden or the Attorney General would appreciate it should a federal court issue a mandamus order directing that the Warden place Alcala on the "work release" program as a barber. Such an order would, of course, directly smack against the discretionary authority vested in the Warden in the operation of the program. From what little enlightenment I can obtain from this record, the "work release" program *just is.* I suspect—and this is beyond the record—that the program came into being upon application by the Warden and subsequent approval thereof under the Safe Streets and Crime Control Act of 1968. There is no reason this court should be guessing. Having so stated, I observe that the "work release" program may not involve anything more than a "favor" or "indulgence" granted by the Warden to those inmates he selects *at his discretion* to work thereon. It thus appears to be entirely an act of *grace* on the part of the Warden whether a prisoner is to be placed on the ill-explained "work release" program and, conversely, when his placement is to be terminated. See

Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed.. 1566 (1935). We have no evidence before us defining what, if any, standards an inmate must achieve in order to qualify for the program or to retain his status once placed thereon. Accordingly, I am unsure of the prisoner's "standing" before us in this suit. Because of my doubt, I am unwilling to concede his standing for purposes of deciding the constitutional contentions raised. I am not unmindful that the United States Supreme Court has heretofore rejected the concept that a constitutional right turns on whether a governmental benefit is characterized as a "right" or as a "privilege". Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). I press the point again that any inmate serving on the "work release" program is, according to both parties before us, a "prisoner" *serving his sentence.* He is thus apparently not in the position of one released from incarceration on probation or parole, both of which have statutory life blood. Those in the latter categories would be entitled to notice and hearing prior to denial of their probationary or parolee status. Gagnon, Warden v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, *supra.* Because "work release" apparently has no statutory or regulatory authorization, a strong argument prevails, in my judgment, that "work release" status is one of *grace* only, and that the due process rights of notice and hearing do not apply thereto. I find no statutory or regulatory authorization in the record before us relating to the "work release" program; probation and parole both have statutory bases. While it does seem obvious that "work release" is intended to meet the "correctional device" features of parole in terms of rehabilitation outside of the confines of the penal institution, still parole conditions are express and one charged with violation thereof may not be returned to the penal institution until he has been accorded a revocation due process notice of violation and hearing. Morrissey v. Brewer, *supra,* at 479–480 of 408 U.S., 92 S.Ct. 2593. The parties have not enlightened me that the "work release" program can be equated with the due process rights attaching to revocation of parole. I therefore simply cannot assume that Alcala has *standing* here to pursue this suit. For reasons hereinafter set forth I am confident that Alcala —regardless of his status as a felon prisoner—has (or had unless intentionally waived) *standing* to raise the challenge before Wyoming authorities, administrative and judicial, and to pursue same to a final and definitive decision.

Section 33–96, Wyoming Statutes, 1957, specifically provides that the Wyoming Board of Barber Examiners shall not refuse to renew a certificate of registration of a barber prior to notice and opportunity to be heard. While it may be that Alcala is correct in his assessment that a hearing before the Board would prove to be futile in light of the mandatory aspects of non-renewal upon "conviction of a felony", still I believe that it is both unwise, improper and violative of proper state-federal relations for this court to accept jurisdiction on the assumption that the Wyoming Board of Barber Examiners, upon such a hearing, shall declare the "conviction of a felony" proviso contained in § 33–95, *supra,* constitutional and, further, that the Board's determination will be upheld by the Wyoming state courts. It is abundantly clear to me that had the Board conducted a hearing on Alcala's request as provided under § 33–96, *supra,* and had the Board determined that the "conviction of a felony" proviso passed constitutional muster, that Alcala, even though a prisoner of the Wyoming penitentiary, *would have had unquestionable standing to appeal the Board's denial of his application for renewal of his barber registration under the provisions of §§ 9–276.31 and 9–276.32 of the Wyoming Administrative Procedure Act to the Wyoming State Courts.*

PICKETT, Senior Circuit Judge (dissenting):

My Associates agree that the complaint filed herein should be dismissed, but differ on the reasons therefor. As I understand their positions, Judge Kerr thinks we should abstain from deciding the case, and Judge Barrett is convinced that Alcala, as a prisoner in the Wyoming State Penitentiary, does not have standing to maintain an action of this nature. The essence of Judge Barrett's position is, I think, that the injury to Alcala by the existence of the alleged unconstitutional statute is neither immediate nor irreparable.

The record shows that Alcala is a competent and qualified barber and has been denied a license to practice his occupation solely upon the basis that he has been convicted of a felony. It is agreed that under a so-called "work release program" Alcala is not actually confined in the Penitentiary at Rawlins, Wyoming, but is employed in a garage at Casper, Wyoming. It is also undisputed that if he had a Wyoming Barber's License he could now be employed in that trade.

The questioned provision of the Wyoming Barber Code flatly prohibits the issuance of a barber's license to anyone who has been convicted of a felony. The validity of this type of statute could, of course, be determined in the state courts, but it is settled that federal courts should not sidestep their responsibility in a case of this kind merely because it might be adjudicated in another forum. Zwickler v. Koota, 398 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). I think the argument that Alcala cannot maintain this action because he should be considered as in actual confinement in the State Penitentiary is contrary to the existing facts. It may be that he could be returned to the Penitentiary at the election of the Warden, but the fact remains that he is not there and cannot work at his trade because of the challenged statute. The United States Supreme Court has rejected the rule that a constitutional right shall not be determined on the question of whether the benefit to a person is characterized as a "right" or "privilege" or is one of grace. The test is "not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1971); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

Any notions that may have existed to the effect that states have the absolute right to prohibit individuals from engaging in employment within the boundaries of a state has, I think been put to rest by recent decisions of the Supreme Court. Sugarman v. McL. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973); In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). These cases dealt with the rights of aliens, but seem to me to be clearly analogous to the question here. The issue is squarely presented in this action and I think we should dispose of it.