CHICAGO ET AL. *v.* FIELDCREST DAIRIES, INC.

No. 706. Argued March 30, 31, 1942.—Decided April 27, 1942.

*Messrs. James A. Velde* and *Walter V. Schaefer,* with whom *Mr. Barnet Hodes* was on the brief, for petitioners.

*Mr. Fred A. Gariepy,* with whom *Mr. Owen Rall* was on the brief, for respondent.

By special leave of Court, *Mr. Albert E. Hallett,* Assistant Attorney General of Illinois, with whom *Mr. George F. Barrett,* Attorney General, was on the brief, for the State of Illinois, as *amicus curiae.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Respondent, a Michigan corporation authorized to do business in Illinois, sells milk to wholesalers and retailers in various cities in the vicinity of Chicago. By an ordinance passed on January 4, 1935, the City of Chicago required that milk or milk products "sold in quantities of less than one gallon shall be delivered in standard milk bottles." § 3094. Respondent sought a permit from petitioner Board of Health to sell milk in "Pure-Pak" paper containers in that city. That permit was not granted. Thereafter, respondent filed suit against petitioners in the United States District Court for the Northern District of Illinois, alleging, *inter alia,* that its "single service,

sterile, sanitary and non-absorbent" containers are "standard milk bottles" within the meaning of the Chicago ordinance; that, if the ordinance is construed as prohibiting respondent from using its paper containers, the ordinance is unconstitutional and invalid under the federal and state constitutions; and that the refusal of the permit has caused and will cause respondent irreparable damage. The complaint prayed for a declaratory judgment that the ordinance be construed so as not to prohibit respondent from using its containers; or, in the alternative, that the ordinance, insofar as it does prevent such use, is unconstitutional and invalid. Issue was joined. In May, 1939, the District Court referred the cause to a master, who held extended hearings. In July, 1939, the so-called Illinois Milk Pasteurization Plant Law (L. 1939, pp. 660–666; Rev. Stat. 1941, c. 56½, §§ 115–134) was enacted, containing certain provisions regulating the use of single service and paper containers (§ 15), and reserving to cities, villages and incorporated towns the power to regulate the distribution, etc., "of pasteurized milk and pasteurized milk products, provided that such regulation not permit any person to violate any provisions of this Act." § 19. On April 27, 1940, the master submitted his report, finding that respondent's paper containers were not "standard milk bottles" within the meaning of the ordinance, and that the ordinance as construed was valid and constitutional. In October, 1940, the District Court, on exceptions to the master's report, held that respondent's containers were "standard milk bottles" within the meaning of the ordinance. And it went on to hold that, under the Milk Pasteurization Plant Law, the city was without power to prohibit the use of such containers. It entered a decree in accordance with that finding, and enjoined petitioners from interfering with respondent in the sale and delivery of milk and milk products in those con-

tainers. 35 F. Supp. 451. On appeal to the Circuit Court of Appeals, that court held that the District Court erred in holding that respondent's containers were "standard milk bottles" within the meaning of the ordinance. But it concluded that the ordinance, insofar as it prohibited, rather than regulated, the use of paper containers, was invalid by reason of the state Act. And it went on to intimate by way of *obiter dictum* that, if the ordinance were construed to prohibit the use of respondent's containers, it would not survive as a constitutional exercise of the police power. 122 F. 2d 132.

On May 15, 1940, while the cause was pending before the District Court, Dean Milk Company, of which respondent is a wholly-owned subsidiary, instituted an action in the Illinois state court against petitioners and other city officials, raising substantially the same issues and seeking substantially the same relief as respondent raised and sought in the federal court. After judgment had been rendered by the District Court in this case, and while the appeal was pending, Dean Milk Company moved in the state court for a decree granting the relief prayed for and retaining jurisdiction by the state court pending final determination of the appeal in this case. Such a decree was entered by the state court in December 1940.

We granted the petition for certiorari because of the doubtful propriety of the District Court and of the Circuit Court of Appeals undertaking to decide such an important question of Illinois law instead of remitting the parties to the state courts for litigation of the state questions involved in the case. *Railroad Commission* v. *Pullman Co.*, 312 U. S. 496.

We are of the opinion that the procedure which we followed in the *Pullman* case should be followed here. Illinois has the final say as to the meaning of the ordinance in question. It also has the final word on the alleged conflict be-

tween the ordinance and the state Act. The determination which the District Court, the Circuit Court of Appeals, or we, might make could not be anything more than a forecast—a prediction as to the ultimate decision of the Supreme Court of Illinois. Here, as in the *Pullman* case, "a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication." 312 U. S. p. 500. Furthermore, the dispute in its broad reach involves a question as to whether a city has trespassed on the domain of a State. Though that issue was not in the case when the complaint was filed, it emerged, due to the passage of the Milk Pasteurization Plant Law, long before the District Court entered its decree. The delicacy of that issue and an appropriate regard "for the rightful independence of state governments" (*Beal* v. *Missouri Pacific R. Co.*, 312 U. S. 45, 50) reëmphasize that it is a wise and permissible policy for the federal chancellor to stay his hand in absence of an authoritative and controlling determination by the state tribunals. As we said in the *Pullman* case, "The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision" and any "needless friction with state policies." See p. 500 and cases cited; *Thompson* v. *Magnolia Petroleum Co.*, 309 U. S. 478, 483–484. It is an exercise of a "sound discretion, which guides the determination of courts of equity." *Beal* v. *Missouri Pacific R. Co.*, *supra*, p. 50. In this case, that discretion calls for a remission of the parties to the state courts, which alone can give a definitive answer to the major questions posed. Plainly, they constitute the more appropriate forum for the trial of those issues. See 54 Harv. L. Rev. 1379. Considerations of delay, inconvenience, and cost to the parties, which have been urged upon us, do not call for a different result. For we are here concerned with the much larger issue as to the appropriate relationship

between federal and state authorities functioning as a harmonious whole.

The desirability of the course which we have suggested is not embarrassed by any question as to whether ready recourse may be had to the state courts. The availability of the state tribunal is obvious, since a case involving substantially identical issues and brought by respondent's parent corporation is pending in the state court. Cf. *Gilchrist* v. *Interborough Rapid Transit Co.*, 279 U. S. 159.

It is of course true that respondent sought to raise in its complaint a constitutional issue—an issue which lurks in the case even though it not be deemed substantial. But here, as in the *Pullman* case, that issue may not survive the litigation in the state courts. If it does not, the litigation is at an end. That again indicates the wisdom of allowing the local law issues first to be resolved by those who have the final say. Avoidance of constitutional adjudications where not absolutely necessary is part of the wisdom of the doctrine of the *Pullman* case.

We therefore vacate the judgment and remand the cause to the District Court with directions to retain the bill pending a determination of proceedings in the state court in conformity with this opinion.

*It is so ordered.*

Mr. Justice Roberts concurs in the result.