## UNITED STATES v. 625.91 ACRES OF LAND IN DUNKLIN COUNTY, MO., et al.

### No. 597.

District Court, E. D. Missouri, S. E. D.

April 13, 1943.

Hal McHaney, of Kennett, Mo., and Oliver & Oliver, of Cape Girardeau, Mo., for claimants, Curators of University of Missouri and University of Louisville.

Elbert L. Ford and Langdon R. Jones, both of Kennett, Mo., for intervenors Celia V. Cannon and Floyd Kinsolving, Jr.

COLLET, District Judge.

The situation developed from the suggestions of the parties, the pleadings, and the admissions and statements made at the pre-trial conference may be stated as follows:

Dr. Kinsolving died on May 5, 1942, a resident of Kennett, Dunklin County, Missouri. At the time of his death he was the owner of a large amount of real estate located in the State of Missouri. He left a will which was duly probated in Dunklin County, Missouri, the county of his residence. By that will he disinherited his children and gave all of his property to his wife, their stepmother, if living, or if she predeceased him, to the Curators of the University of Missouri and to the University of Louisville, Kentucky, share and share alike. His wife predeceased him leaving as the residuary legatees the two universities. This cause was instituted by the Government on May 21, 1942, for the purpose of acquiring approximately a section of the land belonging to the Kinsolving estate, devised by the aforementioned will to the two universities. The tract of land involved herein constitutes only a portion of the Kinsolving estate. The Government paid into the registry of this court the estimated fair value of the tract here involved, that payment consisting of $59,-000. On August 1, 1942, the two universities filed their motion asking for distribution to them of $50,000 of the amount deposited. Evidently, some suggestion of a contest of the will has been made by the Kinsolving heirs since it appears that the representatives of the universities served a copy of their motion for distribution upon counsel representing those heirs. It appears that by agreement counsel for the universities and counsel for the Kinsolving heirs met with Judge Moore at Cape Girardeau on September 17, 1942, for the purpose of having the court fix a time within which the heirs might file an answer and intervening petitions in the condemnation suit setting up such claims as they might have to the property involved and the distribution of the funds representing that property. At this meeting, the court fixed October 1, 1942, as the final date upon which such answers and claims should be filed and fixed October 15, 1942, as the date upon which the intervening petitions were to be heard. On September 30, 1942, the heirs filed a statutory proceeding under the Missouri statute law in the Circuit Court of Dunklin County, Missouri, contesting the will. On October 1st, the day following, they filed an answer and intervening petition claiming the right to have the funds de-

posited in this court representing the value of the property taken, distributed to them upon the theory that the will was invalid.

The will named only the three children, Celia Kinsolving Cannon, Floyd Kinsolving, Jr., and Norris B. Kinsolving. At the time of the making of the will on September 1, 1917, Norris Kinsolving was living and had a son, Maxwell Kinsolving. Prior to the death of the testator, Norris Kinsolving died. Hence, at the time of the death of the testator, Maxwell Kinsolving, the grandchild, represented the interest of his deceased father. Maxwell Kinsolving did not join in the will contest suit and now claims to be the pretermitted heir of the testator. Under the law of Missouri, if a person die leaving a child or children, or descendants of such child or children, in case of their death, not named or provided for in a will, such testator so far as shall regard any such child or children or their descendants not mentioned in the will, shall be deemed to have died intestate. R.S.Mo. 1939, Sec. 526, Mo.R.S.A. § 526. Maxwell Kinsolving claims to fall within that class and in his answer asks for the immediate distribution to him of one-third of the funds deposited in the registry of this court.

Under the foregoing circumstances, the court anticipated the question of whether the validity of the will should be determined on this motion for distribution, or the determination of that motion deferred pending the adjudication of the validity of the will in the proceeding pending in the state court, and designated that question for consideration at this pre-trial conference, requesting counsel for all parties concerned to submit a memorandum of their respective contentions in this regard in advance of the conference and not later than April 5, 1943. Counsel have submitted able and comprehensive memoranda.

The contention of the movants is that the heirs submitted themselves to the jurisdiction of this court prior to the institution of the will contest case in the state court and that, since this court has jurisdiction of the subject matter of this action—the Government of the United Sates being the party-plaintiff—and the action being to acquire property in the name of the Government, this court had complete jurisdiction of both the parties and the subject matter long before the state court acquired jurisdiction of the res by reason of the filing of the will contest suit. From that premise it is argued that this court has exclusive jurisdiction and should proceed in the exercise of that jurisdiction and determine the validity of the will in this action without regard to the pendency of the action in the state court.

The determination of the question presented must depend upon analogy and the application of general principles since there appears to be no direct authority on the precise question.

■ If movants' position be well taken and this court has exclusive jurisdiction, it must necessarily result from the rule of necessity engrafted upon Section 265 of the Judicial Code, 28 U.S.C.A. § 379, as an exception to that Act which prohibits without express exception the issuance of injunctions staying proceedings in a state court. But does the exception apply? The reason for its creation and long existence is the necessity to avoid physical conflict over the res of the controversy which would result if two courts of concurrent jurisdiction made conflicting orders awarding the subject matter of the action to different parties and each court sought to enforce its order. And where the necessity does not exist the rule does not apply.

"This brings us to applications of § 265 apart from these statutory qualifications. The early decisions of this Court applied the Act of 1793 as a matter of course. However, a line of cases beginning with Hagan v. Lucas, 10 Pet. 400, 9 L.Ed. 470, holds that the court, whether federal or state, which first takes possession of a res withdraws the property from the reach of the other. Taylor v. Carryl, 20 How. 583, 597, 15 L.Ed. 1028; Freeman v. Howe, 24 How. 450, 16 L.Ed. 749. See Kline v. Burke Const. Co., 260 U.S. 226, 235, 43 S.Ct. 79, 83, 67 L.Ed. 226, 24 A.L.R. 1077: 'The rank and authority of the (federal and state) courts are equal, but both courts cannot possess or control the same thing at the same time, and any attempt to do so would result in unseemly conflict. The rule, therefore, that the court first acquiring jurisdiction shall proceed without interference from a court of the other jurisdiction is a rule of right and of law based upon necessity, and where the necessity, actual or potential, does not exist the rule does not apply. Since that necessity does exist in actions in rem and does not exist in actions in personam, involving a question of personal liability only, the rule ap-

plies in the former but does not apply in the latter.'" Toucey v. New York Life Ins. Co., 314 U.S. 118, loc. cit. 134, 62 S. Ct. 139, loc. cit. 144, 86 L.Ed. 100, 137 A. L.R. 967.

There is no necessity that exclusive jurisdiction over a particular cause be exercised by one of two courts having concurrent statutory jurisdiction of such actions unless the action is one in rem and the possessory control of the res is necessary for the reason noted. The question is therefore narrowed to a determination of whether this proceeding is such an action.

■ Generally speaking, proceedings under the right of eminent domain are said to be proceedings in rem. The initial stage of such proceedings is a proceeding in rem. For then it is determined whether the condemnor has the right to exercise the power and if so whether its exercise is for a public use. Those questions are necessarily determined preliminary to any inquiry as to damages, because absent appropriate answers thereto no occasion arises for considering damages. The exclusive power in one court to determine whether the property shall be appropriated and put to the use of the condemnor in a public service or ‘retained by its owners for their private use is absolutely necessary because then it is the res that is the subject of the order and the res is being awarded to one or the other of opposing interests. For illustrative purposes it may be observed that when one court, state or federal, has acquired jurisdiction of such a cause the rule of the "res cases" (Toucey v. New York Life Ins. Co., supra, loc. cit. 139, 62 S.Ct. loc. cit. 147, 86 L.Ed. 100, 137 A.L.R. 967) would prohibit another court from taking jurisdiction of a proceeding, the nature of which was to adjudicate the right of the condemnor in the other action to acquire the property.

■ Although many different procedures have been adopted by legislative action in different jurisdictions as appropriate methods for the exercise of the power of eminent domain, all contemplate and accomplish the objective that an interlocutory judgment in some form shall first adjudicate these essential prerequisites to the appropriation. When that judgment is entered its result in one form or another passes the title to the res and the necessity for the further possessory control of that res · in only one court ceases. No longer can there be a dispute as to who is entitled to the property, and the proceeding passes into another phase—the determination of the quantum of damages and the persons entitled to distribution thereof. The separability of the two phases of the complete condemnation case is illustrated by the fact that oftentimes the prescribed procedure places the determination of the latter questions in the hands of an entirely different forum. 20 C.J. § 296, p. 864; 29 C.J.S., Eminent Domain, § 205. In many jurisdictions those who wish to make claims for the damages awarded need not enter their appearance until the damages are ascertained and distribution is imminent. At the time of distribution the contest is no longer between the original condemnor and the original owner over the right to the property but becomes one between individual entities for the damages awarded. The conception, that the award in money stands in the place of the property, while appropriate for many purposes, does not compel the treatment of the right to the fund awarded as a thing which could provoke physical conflict between the officers of courts. The right referred to becomes a money judgment enforceable in orthodox procedures not necessitating the delivery of possession of specific property.

■ The present proceeding is in its later stage and the present conflict concerns the rights of conflicting interests to the fund awarded. The determination of those rights necessitates the adjudication of the validity of a will. In that respect it does not differ materially from the case of Mandeville v. Canterbury, 63 S.Ct. 472, 87 L.Ed. ——, decided February 1, 1943, in which the rights of claimants to an estate depended upon the construction of a will. In that case the action was held to be one in personam in which the possessory control of the res—the estate—was not essential to either the state or federal courts and hence exclusive jurisdiction in the federal court was denied.

Conceding for present purposes the accuracy of movants' contention that this court has jurisdiction of the parties and the subject matter, it does not follow for reasons heretofore noted that this court has exclusive jurisdiction and should now proceed to determine in this action involving only a comparatively small portion of the entire Kinsolving estate, the validity of a will affecting all of the estate.

Considerations of comity require the exercise·of some judicial discretion under circumstances of this kind. As in cases where declaratory judgment actions are instituted in the federal courts either before or after actions involving the same subject matter are begun in state courts, the pendency of the action in the state court will not in most instances, if at all, deprive the federal court of jurisdiction per se. Yet the Supreme Court has placed the obligation upon the District Courts to stay such proceedings in the federal court if by so doing the recognized rules of comity suggests such action and the rights of the parties to the declaratory judgment action will not be unreasonably jeopardized from delay or otherwise. Railroad Commission of Texas et al. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Atlas Life Ins. Co. v. W. I. Southern, Inc., 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987; Compare Landis et al. v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153; Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355. There appears to be no logical reason why the principle announced in these cases should not apply under the present circumstances. While this court may not be deprived of jurisdiction merely by reason of the pendency of the will contest ·action in the state court, the state court has the right to proceed with that litigation without interference from this court, and the very fact that a different conclusion concerning the validity of the will might be reached in this court from that reached in the state court with resulting conflicting judgments and decrees relating to that portion of the estate involved in this action is sufficient to compel in the interest of comity, an abstinence of the exercise of jurisdiction by this court for such a reasonable time as to permit the expeditious adjudication of the validity of the will by the state court and a recognition by this court of the conclusion there reached.

At the same time and for the reasons heretofore noted, the disposition of this cause should not be automatically and arbitrarily stayed indefinitely by reason merely of the pendency of the will contest suit in the state court and thereby permit the deferment of the movants' application for the distribution of the deposited funds for an unreasonable length of time. Landis et al. v. North American Company, supra. In order that this may not occur, counsel for the movants are authorized and requested to file with the clerk of this court a certified copy of the records appearing in the minute book of the clerk of the state court in which the will contest case is now pending or to which it may hereafter be transferred, showing the date of the filing of that cause, the date of the filing of subsequent pleadings, all orders setting the cause for trial or orders of continuance which have been made; and to thereafter file with the clerk of this court a similar transcript of subsequent record entries showing the progress of the case in the state court.

Since the question of whether Maxwell Kinsolving is the pretermitted heir of the testator will affect only a one-third interest in the property involved the determination of that question could not eliminate the necessity for holding this cause in abeyance, and therefore it need not be determined at this time.

It is, therefore, the order of this court that the hearing of the motions for partial distribution be deferred, this court retaining jurisdiction to set that motion for hearing at such future time as the facts and circumstances may warrant.