Louise PERRY, William S. Kilmer, Gloria Kilmer, Ivars Aldins, Lamont Thompson, Florence Thompson, and Barbara Adkins, on behalf of themselves and all others similarly situated

v.

LIBERTY CONSUMER DISCOUNT COMPANY, Provident National Bank, Homemakers Loan and Consumer Discount Company, Valiant Finance Consumer Discount Company, Associates Consumer Discount Company, on behalf of themselves and all others similarly situated.

Civ. A. No. 76–3705.

United States District Court,
E. D. Pennsylvania.

July 20, 1977.

James G. Buckler, Susan J. Cherner, Delaware County Legal Assistance Ass'n, Inc., Darby, Pa., for plaintiffs.

James D. Crawford, Charles W. Boohar, Philadelphia, Pa., for defendant Liberty Consumer Discount Co.

Tyson W. Coughlin, Philadelphia, Pa., for defendant Provident Nat. Bank.

Joseph Glider, Philadelphia, Pa., for defendant Associates Consumer Discount Co.

## OPINION

LUONGO, District Judge.

Plaintiffs are four borrowers, each of whom entered into loan contracts with one of the three commercial lending company defendants.[1] Count I of plaintiffs' Complaint challenges the defendants' practice of failing to disclose to the borrower that they do not rebate unearned finance charges when, as the result of borrower's default, they accelerate the loan and institute suit to recover all amounts due under the defaulted loan prior to the maturity of the loan. Count I alleges that this practice violates the Truth in Lending Act, 15 U.S.C. §§ 1638(a)(9), 1639(a)(7) (hereinafter the Act) and Regulation Z thereunder, 12 C.F.R. § 226.8(b)(4). Count II alleges that the non-rebate practice itself is contrary to the Pennsylvania Banking Code, 7 P.S. § 309(f) and the Pennsylvania Consumer Discount Company Act, 7 P.S. § 6213K.

Plaintiffs seek to maintain the suit as a class action on behalf of all Pennsylvania residents who have in the past entered into loan transactions which have been accelerated or which are subject to such acceleration provisions, and which did not provide for the rebate of pre-computed unearned finance or insurance charges upon acceleration. Plaintiffs also seek to maintain the suit against the class of Pennsylvania lending institutions which have entered into loan agreements with members of the proposed plaintiff class providing for pre-computed interest, but not for the rebate of the unearned portion of such interest if the loan is accelerated.

The court's jurisdiction is asserted under 28 U.S.C. § 1337, providing for jurisdiction over suits "arising under any Act of Congress regulating commerce . . .," and under 15 U.S.C. § 1640(e), providing for jurisdiction for suits alleging, *inter alia*, violation of the Truth in Lending Act's disclosure requirements. Pendent jurisdiction is asserted over the alleged state law violations.

Before me are the motions of defendants Provident National Bank and Associates Consumer Discount Company to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, and the motion of Liberty Consumer Discount Company to dismiss the federal claim under Fed.R.Civ.P. 12(b) for failure to state a claim and to abstain as to the state claim. The respective plaintiffs have filed memoranda in opposition to each defendant's motion. The primary ground for dismissal is common to each of the three motions: Unearned finance charges which are not rebated at the time the loan is accelerated after default are not "default, delinquency, or similar charges payable in the event of late payments," within the meaning of the Truth in Lending Act, 15 U.S.C. § 1638(a)(9), or Regulation Z, 12 C.F.R. § 226.8(b)(4), thereunder, therefore, there is no requirement that their non-rebate be disclosed, and no violation of the Truth in Lending Act or Regulation Z has occurred. Liberty Consumer Discount Company seeks to have this court abstain from adjudicating the instant suit on the ground that the issue of the validity under state law of the practice challenged here is presently before the Pennsylvania state courts in the suits seeking recovery of the defaulted loans, and the issue has not previously been interpreted by the Pennsylvania state courts.

## FACTS

The Truth in Lending Act and the regulations promulgated thereunder require the creditor in most loan transactions to furnish certain specified information to the borrower. This information must be provided on a separate disclosure statement or on the face of the instrument evidencing the obligation. Failure to make such disclosures subjects the lender to liability to the borrower for

---

1. The caption and allegations of the Complaint refer to seven plaintiffs and five defendant lending institutions. On March 1, 1977 Lamont and Florence Thompson stipulated to the dismissal of their action against Valiant Consumer Discount Company. At oral argument on the motions to dismiss, the attorney for plaintiff Ivars Aldins and the attorney for defendant Homemakers Loan and Consumer Discount Company notified the court that they had effected a settlement of the case as between their clients.

certain statutory penalties. "Disclosure," then, is a term of art under the Truth in Lending Act. Among the information that must be so disclosed are the "default, delinquency, or similar charges payable in the event of late payments." 15 U.S.C. § 1638(a)(9); 12 C.F.R. § 226.8(b)(4).

The specific facts of each loan arrangement are unimportant for purposes of the present motions. The relevant facts may be generally summarized as follows. Each of the named plaintiffs entered into loan agreements with one of the named defendant-lenders. The amounts borrowed range from $452.05 to $3051.35. The loans were made to enable the borrower to purchase items of personal property (none was for the purchase of a motor vehicle) or to refinance a previous loan from the same lender. Some of the loans were unsecured and others were secured with "household goods" and/or an automobile. Each loan was to be repaid in installments, with finance charges, and in some instances insurance charges, added to the principal. The total amount owed is referred to as the Total Amount Due. Each agreement includes a disclosure statement setting forth the amount financed (principal), the finance charge (interest), any life insurance charge, the total amount due, and the annual percentage rate (interest rate). Charges for late payments are also disclosed. Each loan agreement contains an acceleration clause giving the lender the right to declare the total unpaid balance (total amount due less payments made) immediately due and payable in the event that the borrower defaults on any payment. Finally, each agreement contains a prepayment clause which states, in effect, that the total unpaid balance may be paid by the borrower at any time before it is due, and in the event of such prepayment, the lender would rebate to the borrower unearned finance charges, i.e., finance charges included in the total unpaid balance which at the time the loan was prepaid had not yet accrued.

Each plaintiff, after making only a few, or in some cases no, installment payments defaulted on the loan. After some period, the respective lender exercised its right of acceleration and instituted civil suit in state court against the borrowers for the total unpaid balance due under the loan. Neither at the time suit was instituted, nor at any time subsequent thereto, did the lender rebate to the plaintiffs any portion of the finance charges that were unearned as of the time suit was instituted. The disclosure statement accompanying each loan agreement contains no statement that such unearned finance charges would not be rebated to the borrowers upon acceleration.

## DISCUSSION

The recent decision of the Court of Appeals for the Third Circuit in *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257 (3d Cir. 1975), bears heavily on the issues presented in the instant case. In that case plaintiffs entered into a retail installment contract with an automobile dealer to finance the purchase of an automobile. The contract, but not the disclosure statement, contained a typical acceleration provision giving the dealer "the right to declare all amounts due or to become due hereunder to be immediately due and payable" in the event of default in any payment by the buyer. The disclosure statement delineated the charges that would be assessed against plaintiffs in the event of late payment of an installment, but it did not include a description of the right of acceleration in the event of late payment. Plaintiffs made none of the payments required under the contract, and the automobile was ultimately repossessed by the dealer. Thereafter, plaintiffs instituted suit in District Court alleging that the disclosure statement delivered with the contract did not comply with the Truth in Lending Act and Regulation Z thereunder. They sought statutory damages for the inadequate credit disclosures.

The District Court held that the acceleration provision was a "default, delinquency, or similar charges payable in the event of late payments" under § 128(a)(9) of the Truth in Lending Act, 15 U.S.C. § 1638(a)(9), and § 226.8(b)(4) of Regulation Z, 12 C.F.R. § 226.8(b)(4) which, therefore,

had to be disclosed. The Court of Appeals reversed. It began its analysis by paraphrasing the Congressional declaration of purpose set forth in 15 U.S.C. § 1601: The Truth in Lending Act's "purpose is to assure credit customers a meaningful disclosure of credit terms, thus enabling these consumers to compare more readily the various available credit terms and thereby avoid the uninformed use of credit." 527 F.2d at 262. "The Act is a remedial statute that should be construed liberally to ensure achievement of these goals." *Id.* (citations omitted). *See also N. C. Freed Co. v. Board of Governors of the Federal Reserve System,* 473 F.2d 1210, 1214 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973). The Court of Appeals recognized that acceleration clauses could have substantial impact on the borrowing consumer:

> "Absent a provision to the contrary, a creditor receives a windfall when he accelerates payment of a contractual obligation because the accelerated debt obligation includes an unearned finance charge. This results from the fact that the finance charge on the stated debt was computed on the basis of the full credit period until maturity, which period has now been shortened. To remedy this inequitable result, the laws of many states, and some contracts, require the creditor to rebate to the borrower the unearned portion of the finance charge or to credit his obligation for this amount."

527 F.2d at 265.

In the case before the Court of Appeals, however, state law required that the lender rebate any unearned finance charges at the time of acceleration. The loan had been obtained to finance the purchase of an automobile, and thus was governed by section 22(B) of the Pennsylvania Motor Vehicle Sales Finance Act, 69 P.S. § 622(B), which provides in part:

> "Whenever all the time balance is liquidated prior to maturity by prepayment, refinancing or termination by surrender or repossession and re-sale of the motor vehicle, the holder of the installment sale contract shall rebate to the buyer immediately the unearned portion of the finance charge."

Thus the only possible "default, delinquency, or similar charges" present in the case was the shortening of time for payment of the principal amount of the loan.

The Court of Appeals held that the "right to accelerate payment of the unpaid principal does not come within the meaning of the phrase 'default, delinquency, or similar charges.'" *Id.* Neither the Act nor its legislative history define "default, delinquency, or similar charges." The Court of Appeals reasoned that the legislative history of the Act indicates that Congress intended to enact remedies reflecting commercial realities, and therefore Congress presumably meant to ascribe to the terms "default charges" and "delinquency charges" their generally accepted meanings in the consumer credit industry. In the commercial credit field, such charges were "sums above and beyond the amount ordinarily due in the event of timely payment." *Id.* at 266. "Certainly, the shortening of time for repayment of the principal may be a burden to the borrower. But it is not a tangible pecuniary sum assessed because of his default and in addition to the amounts he is already obligated to pay." *Id.* at 267. The Court of Appeals concluded:

> "When a creditor is required to rebate the unearned portion of the finance charge upon acceleration, the result is a shortening of the time for repayment of the principal, not the assessment of an additional penalty charge. [Citation] The borrower incurs no cost other than that disclosed on the face of his credit contract. The creditor is merely given the right to pursue his remedies against the defaulting borrower without awaiting the expiration of the term of the contract."
> *Id.* at 266.

In the instant suit it is not the failure to disclose the right of acceleration which is challenged as a violation of the Truth in Lending Act, but the failure to disclose that upon acceleration unearned finance charges are not rebated to the borrower. In *McCrackin-Sturman* the Court of Appeals

was very careful to distinguish the case before it from the situation where unearned finance charges are not rebated:

> "We emphasize that we are not here confronted with the question whether the Truth in Lending Act or Regulation Z require disclosure of an acceleration provision under which the creditor is not required to rebate the unearned finance charge."

527 F.2d at 260 n. 3. *See also* 527 F.2d at 266 n. 20.

Each of the defendant lenders, however, has represented in its brief in support of its motion to dismiss and/or at oral argument on the motions that while they do not rebate unearned finance charges upon *acceleration*, if at any time after the loan has been accelerated the borrower repays the loan prior to its original maturity date, finance charges that are unearned as of the date of repayment are rebated to the borrower notwithstanding the prior default. They are obligated to do so, they concede, either under the Pennsylvania Consumer Discount Company Act or the Pennsylvania Banking Code. The Pennsylvania Consumer Discount Company Act, 7 P.S. § 6214D provides:

> "A licensee [discount company] shall permit a consumer to pay partially or wholly any contract or any installment on a contract, prior to the due date. On any contract which is wholly prepaid by cash, renewal or otherwise, at any time prior to maturity, the licensee shall refund to the consumer a portion of the interest or discount. The portion to be refunded shall be that proportion of the interest or discount which the sum of the monthly balances originally scheduled to be outstanding during the full months following such prepayment in full bears to the sum of all monthly balances originally scheduled to be outstanding, both sums to be determined by the schedule of payments in the original contract, provided a licensee shall not be required to refund any portion of such interest or discount when the total amount of the refund computed as herein provided is less than one dollar ($1). Such refund shall be computed and paid or credited at the time of prepayment on the contract."

The Pennsylvania Banking Code, 7 P.S. § 309(g) provides:

> "*Rebate of unearned charges*—In the event of payment or refinancing of the balance of a loan prior to maturity the institution shall pay or credit a refund of the unearned portion of the charge made pursuant to subsection (a) of this section in an amount which shall be at least the amount computed, for the unexpired period to the date of scheduled maturity, by the accounting method known as 'the sum of the digits' or 'the rule of 78' except that no such refund shall be required in an amount less than one dollar ($1) or in any amount until the institution has received a minimum charge of five dollars ($5) for the loan."

Loan agreements of lenders covered by the above Acts contain what is denominated a "prepayment clause" to meet the requirements of the above quoted provisions. The clause in the Associates Consumer Discount Company contract is typical:

> "*Prepayment in Full Rebate*
>
> The Loan Agreement, or any payment thereof, may at the option of the Borrower(s) be paid in whole or in part prior to maturity. If Borrower(s) repays the loan in full before the last payment date, the Lender will refund the finance charges for the months prepaid using the 'Rule of 78' method. No portion of the service charge will be refunded."

In my view, the above quoted statutory provisions, as implemented through the loan contract prepayment clauses require the lender to rebate unearned finance charges when a loan has been fully repaid before its maturity date, even if there has been a default on the loan by the borrower and an acceleration by the lender at some earlier time. That is, prepayment of a loan may be effected even though involuntarily and as a result of the acceleration of the remaining installments. This is significant because I fully agree with the Court of Appeals for

the Third Circuit that a very different situation would be presented concerning whether the borrower were being assessed a "default, delinquency, or similar charge" (requiring disclosure) if the lender had the power to retain unearned finance charges upon full repayment of the loan prior to the original maturity date.

The plaintiffs maintain that defendants nevertheless are required to disclose their acceleration and rebate practice because *McCrackin-Sturman* holds that "[w]hen a creditor elects to terminate a contract by accelerating the full balance, he must give an interest rebate at the time of acceleration, not at the time of repayment, or a default charge is imposed, which must be disclosed." (Memorandum of Plaintiffs William Kilmer and Gloria Kilmer, in Opposition to the Motion of Provident National Bank to Dismiss Plaintiffs' Complaint at 4.) In the instant case, plaintiffs point out, rebate is not made upon acceleration, but only after the loan is repaid. I believe the plaintiffs construe the holding in *McCrackin-Sturman* too broadly. In *McCrackin-Sturman* the automobile purchased with the loan proceeds had been repossessed. The Motor Vehicle Sales Finance Act, section 622(B), (*supra* at p. 1356) provides that one means of liquidating the debt is through repossession of the vehicle. Thus the debt there had been liquidated, the borrower no longer had use of the money, and unearned finance charges were required to be rebated in order to avoid a default or delinquency charge. In my view, that is the narrow holding of *McCrackin-Sturman*. There is no default or delinquency charge to be disclosed where unearned finance charges are rebated when the debt is liquidated, voluntarily or involuntarily. In the instant case unearned finance charges are rebated as soon as the borrower liquidates the debt, i. e., by repaying the money and foregoing its use. Thus the practice in the present case is consistent with the requirements of *McCrackin-Sturman* and no default or delinquency charge is imposed. No disclosure of the defendants' practice is, therefore, required.

Examining the instant case completely apart from *McCrackin-Sturman,* it is quite clear that the borrowers pay no extra charge for their default. So long as they retain the money they pay interest—finance charges—on it, just as if they had not defaulted. As soon as the money is repaid, unearned finance charges are rebated. The only consequence that is visited upon the borrowers because of their default is the acceleration, and *McCrackin-Sturman* undeniably holds that acceleration alone is not a "default, delinquency, or similar charge" which the Truth in Lending Act requires be disclosed.[2]

My conclusion that in order to avoid a default or delinquency charge, the rebate of unearned finance charges must only follow *prepayment,* and not *acceleration,* implicitly rejects the conclusion set forth in the October 22, 1974 staff opinion letter of the Federal Reserve Board that "acceleration of payments [is] . . . essentially a prepayment of the contract obligation." *See* 527 F.2d at 267 n. 22. To the extent that acceleration is identical to a prepayment by the borrower, rebate of unearned finance charges would have to follow immediately upon acceleration. If they are identical, withholding the rebate would be the same as withholding rebate after a prepayment. The Court of Appeals in *McCrackin-Sturman,* in dictum, noted its apparent acceptance of the Federal Reserve Board staff position, 527 F.2d at 269 n. 28, and its dictum expression gives me pause, but I nevertheless respectfully disagree. It is not a new path which I strike out upon, however. The idea that acceleration is essentially the same as prepayment has been considerably criticized. In *Martin v. Com-*

2. A somewhat stronger argument might be made that a default or delinquency charge is assessed when the lender obtains a judgment against the borrower for the outstanding amount of the loan and continues to charge the borrower finance charges on the loan until the judgment is satisfied. Presumably between the time of the judgment and the time it is satisfied the lender would earn both the finance charges and the standard six percent interest on unpaid judgments. One of the defendants, when I posed this potential problem, suggested that the judgment could be molded to avoid the lender collecting interest on the outstanding debt twice-over, and thereby perhaps assessing a default charge which had to be disclosed. In any event, that situation is not before me; none of the defendant lenders has obtained a judgment against a plaintiff for the defaulted loan.

*mercial Securities Company, Inc.,* 539 F.2d 521, 529 (5th Cir. 1976), a case presenting the same issue as is presented by the instant suit, the Court of Appeals for the Fifth Circuit stated:

"Affording the substantial weight to the [Federal Reserve Board staff opinion] . . . letter that *Philbeck v. Timmers Chevrolet, Inc.,* [499 F.2d 971 (5th Cir. 1974).], mandates, we nevertheless can not accept the staff's interpretation of the requirements of sections 226.8(b)(4) and 226.8(b)(7). With deference, we find its one-sentence conclusion that an acceleration of payments is essentially a prepayment of the contract obligation to be an analytical construction of regulatory intent which has not been expressed in language that 'all who run may read.' In the installment credit context prepayment and acceleration appear to be conceptually antithetical. The former is the unilateral act of the debtor; the latter the unilateral act of the creditor in the typical installment contract." (footnotes omitted)

*See also Begay v. Ziems Motor Co.,* 550 F.2d 1244 (10th Cir. 1977); *St. Germain v. Bank of Hawaii,* 413 F.Supp. 587 (D.Hawaii 1976); *Morris v. First National Bank,* 5 CCH Consumer Credit Guide ¶ 98,568 (N.D.Ga.1975). As I view it, acceleration is but the first step by the lender in *attempting* to obtain prepayment from the borrower; in no sense can acceleration and prepayment be equated.

I conclude, therefore, that acceleration is conceptually distinct from prepayment; that so long as unearned finance charges are rebated to the borrower upon prepayment, no "default, delinquency, or similar charge" is assessed the borrower as the result of his default; and the practice complained of in the instant suit is not required to be disclosed by the Truth in Lending Act or Regulation Z.

Count II of plaintiffs' Complaint sets forth a pendent state law claim alleging that the defendants' refusal to rebate unearned finance charges upon *acceleration* of an obligation in default violates the Pennsylvania Consumer Discount Company Act, 7 P.S. § 6213K, and the Pennsylvania Banking Code, 7 P.S. § 309(f). To the extent that it is necessary to rule on the motions to dismiss the federal claim, I have interpreted sections 309(g) of the Banking Code and 6214D of the Pennsylvania Consumer Discount Company Act to require rebate of unearned finance charges upon *prepayment* of the loan by the borrower. Having dismissed the federal claim, I decline to exercise pendent jurisdiction over Count II and engage in any further interpretation of Pennsylvania state law. *See Nelson v. Southeastern Pennsylvania Transportation Authority,* 420 F.Supp. 1374, 1384 (E.D.Pa. 1976).

The defendant Liberty Consumer Discount Company bases its motion to dismiss in part on the ground that this is an appropriate case for the court to abstain. Liberty Consumer argues that the instant suit raises significant and complex state law questions that should be adjudicated in the state courts in the first instance, that those issues can be adjudicated in the state court suits for collection of the defaulted debts, and that if the Pennsylvania courts interpret state law to require rebate of unearned finance charges at the time of *commencement* of a collection action, the plaintiffs' claims based upon failure to disclose under the Federal Truth in Lending Act would be obviated.

At oral argument counsel for Liberty Consumer Discount Company stated, not surprisingly, that he would not press his motion to abstain if the court concluded that dismissal of plaintiffs' claims was otherwise proper. I consider, therefore, that the motion to abstain has been withdrawn, but in any event, this is not a proper case for abstention. Traditionally the abstention doctrine has been invoked when deferring to the state courts to resolve a previously undecided issue of state law may avoid the necessity of deciding a federal constitutional question. *See Chicago v. Fieldcrest Dairies, Inc.,* 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942); *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The abstention doctrine has also been invoked where unresolved issues of state law are presented but no constitutional issue must be adjudicated. *See Ryan v. First Pennsylvania Banking and Trust Co.,* 519 F.2d 572 (3d Cir. 1975). The general rule requires, however, that where decision of state law ques-

tions is necessary to adjudication of the federal statutory claims, "it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment." *Meredith v. Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

In the instant suit the federal question presented is not of constitutional dimension, and some interpretation of the state law was necessary for adjudication of the federal question. The unsettled state law questions which I have not addressed are presented in separate pendent state law claims. By exercising my discretion to dismiss the pendent state law claims, I have avoided unnecessary decision of those state law questions.

Defendants' motions to dismiss the Complaint will be granted.