**EAST NAPLES WATER SYSTEMS, INC., et al., Plaintiffs,**

v.

**BOARD OF COUNTY COMMISSIONERS OF COLLIER COUNTY, et al., Defendants.**

**No. 85–0787–CIV–MARCUS.**

United States District Court, S.D. Florida.

Jan. 6, 1986.

Gary S. Phillips, Sparber, Shevin, Shapo & Heilbronner, P.A., Miami, Fla., James H. Seisky, Naples, Fla., for plaintiffs.

Earl G. Gallop, Karon, Morrison & Savikas, Miami, Fla., Burt L. Saunders, Co. Atty., Naples, Fla., for defendants.

MARCUS, District Judge.

The Defendants, the Board of County Commissioners of Collier County, et al., have moved this Court pursuant to Fed.R. Civ.P. 12(b)(1) for the entry of an order dismissing or staying this lawsuit invoking the abstention doctrine.

Plaintiffs' amended complaint in this cause of action has charged that certain zoning decisions and utility franchise ordinances taken by the Defendants have deprived Plaintiffs of their due process and equal protection rights, under Title 42 U.S.C. Section 1983. The Plaintiffs in the instant cause of action are the East Naples Water Systems, Inc. (ENWS), an owner and operator of various private water and sewer utilities; the Glades, the developer of a parcel of land in an unincorporated area of Collier County, Florida; and Hubschman Associates and it's individual partners (Hubschmans), the owners of a particular parcel of land apparently developed by Glades. The Defendants include the Board of County Commissioners of Collier County (Board); the Collier Water and Sewer District (WSD); the former and current individual County Commissioners and Board Members of WSD; a former County Public Utility Director (Berzon); and the current County Manager (Lusk).

The amended complaint has alleged that the Board had used Hubschman's applications for planned unit development zoning for Plaintiffs' Winter Park and Naples Sunrise developments to coerce ENWS into accepting a purportedly unfair utility franchise from the County; that the water and sewer utility restrictions embodied in a Winter Park approval Ordinance Number 83–32, imposed discriminatory conditions upon Plaintiffs which confiscate their property and deprive them of future utility facilities, customers and revenues without due process of law; that in March, 1985, the County, through the Defendant County Manager, allegedly interfered with ENWS' existing business relationship by soliciting it's prospective customers; and finally, that the County lacks the requisite authority to require ENWS to enter into utility franchise agreements, and that even if such authority did exist, the County had confiscated Plaintiffs' property and discriminated against them by offering them unfair franchise terms.

The history of this case, these parties, and this cause of action involves substantial development and pleadings in at least four state court suits. A complete review of the history of these cases is required in order to explain fully this Court's decision to apply the abstention doctrine and stay

the federal cause of action until the completion of *East Naples Water Systems, Inc., et al. v. Board of County Commissioners of Collier County, et al.,* now pending in Circuit Court for the 20th Judicial Circuit in Collier County.

The Plaintiffs filed their first cause of action in May of 1982 in the Circuit Court in and for Collier County, Florida, in the case of *East Naples Water Systems, Inc. v. Board of County Commissioners,* No. 82–0888. In that case, ENWS sought a declaration that County Ordinance Number 76–71, which provided for franchising and rate regulation of water and sewer utilities violated the Florida constitution on various grounds including the alleged absence of the Board's jurisdiction over ENWS. The trial court dismissed ENWS' complaint and, subsequent thereto, the Florida Appellate Court reversed and remanded. *See East Naples Water Systems, Inc. v. Board of County Commissioners,* 457 So.2d 1057 (Fla. 2nd DCA 1984). In so doing the Appellate Court found that on remand the action would determine whether the Water Systems is subject to the jurisdiction of the Board of County Commissioners. ENWS and the Board have continued to litigate that case in state court.

The second action was instituted in or about September 1984 by ENWS and the Hubschmans who sued the County and WSD in *East Naples Water Systems, Inc. and Hubschman Associates, v. Collier County and Collier County Water Sewer District,* No. 84–1785, also in Collier County Circuit Court. In that suit, ENWS and the Hubschman's have sought a declaration that WSD resolution number 84–3, which provided for the collection of certain sewer impact charges violated Florida law on the grounds that WSD improperly adopted the resolution.

The third cause of action, entitled *East Naples Waters System, Inc. and the Glades v. Board of County Commissioners, et al.,* No. 83–1856, was filed in September of 1983, also in the 20th Judicial Circuit for Collier County. In that case Plaintiffs ENWS and Glades sued the Board and it's then current individual commissioners in an action that is substantially identical to the instant lawsuit in the federal court. ENWS and Glades sought in that case various forms of equitable relief based on the Board's allegedly discriminatory application of County Ordinance No. 83–32 and resolution number 83–183 to ENWS and Glades. Apparently Resolution Number 83–183 denied ENWS' petition for water and sewer franchise containing certain terms proposed by ENWS, and ordinance number 83–32 imposed system development charges and required developers to deed water and sewer lines to the County. It also required the users of water and sewer facilities to be customers of the County.

In June and again in November of 1984, ENWS and Glades filed amended complaints in the state cause of action, Case No. 83–1856, adding in the second amended complaint the Hubschmans as Plaintiffs, and WSD as a Defendant. That complaint sought unspecified damages and equitable relief based on the allegation that County Ordinance No. 83–32 unconstitutionally deprived ENWS, Glades and Hubschman's of both due process and equal protection of the laws. The second amended complaint *also* claimed that the Defendants violated Florida anti-trust law.

On August 7, 1985 a Florida Appellate Court affirmed the dismissal of the anti-trust claim in Case No. 83–1856, *East Naples Water Systems, Inc., et al. v. Board of County Commissioners of Collier County, et al.,* 473 So.2d 309 (Fla. 2nd DCA 1985). Case No. 83–1856 has been actively litigated in the state courts of Florida for more than two years.

Subsequent to the commencement of these three state court actions and the instant federal suit, in July 1985 the Hubschmans sued WSD in an action entitled *Hubschman Associates, et al., v. Collier County Water-Sewer District,* Case No. 85–1742, also in the Circuit Court for the 20th Judicial Circuit in Collier County Florida, seeking damages and declaratory relief based on the allegation that WSD Resolution 85–4 (which provided for inclusion of

engineering costs and property assessments) deprived them of due process and equal protection of the laws under 42 U.S.C. Section 1983.

A comparison of the second amended complaint in state court Case No. 83–1856 and the amended complaint filed in this federal district court makes abundantly clear that the Plaintiffs' suits in each case are virtually identical. We might add that all of the Defendants in Case No. 83–1856 are named as Defendants in the amended federal complaint. But the amended federal complaint also names as Defendants two current county commissioners (Goodnight and Hasse) who did not become commissioners until after the Plaintiffs filed their second amended complaint in state court Case No. 83–1856, the former County Public Utilities Director Berzon, who is not named in the state court case, and finally, the current County Manager Lusk. In all other respects the parties in both state Case No. 83–1856 and the federal suit are identical. Moreover, the claims asserted in Plaintiffs' amended federal complaint and in the second amended complaint embodied in state court Case No. 83–1856 are, in my judgment, virtually identical as the following summary makes clear:

| ALLEGATIONS | AMENDED FEDERAL COMPLAINT | SECOND AMENDED COMPLAINT IN STATE COUNT CASE NO. 83–1856 |
|---|---|---|
| 1. This action arises from the "unlawful efforts of defendants to gain ownership of and to exercise unlawful control over the water and sewer business of the unincorporated portion of Collier County; to confiscate the property of, and the right to receive revenues by, privately owned water and sewer utilities in the area; and to unlawfully inhibit the growth of privately owned water and sewer utilities [and developers] in that area." | Para. 15 | Para. 1 |
| 2. Background of plaintiffs' Winter Park residential development and utility. | Para. 16(a)–(t) | Para. 3–7 14–26 |
| 3. On 1/30/80, Hubschmans applied for PUD zoning for Winter Park. Their application was granted on 7/12/83 by County Ordinance No. 83–32. "Section 14 of the Ordinance contains unlawful utility restrictions." | Para. 20 | Para. 8 |
| 4. Plaintiffs will incur additional construction expenses and difficulty in selling residential units due to Ordinance No. 83–32. | Para. 23 | Para. 9–13 |

| ALLEGATIONS | AMENDED FEDERAL COMPLAINT | SECOND AMENDED COMPLAINT IN STATE COUNT CASE NO. 83–1856 |
| --- | --- | --- |
| 5. Defendants have previously "granted multi-family and single-family zoning for portions of areas known as The Glades, Naples Sunrise 1, 3 and 4, and Lakewood, without the objectionable utility restriction that the Board has imposed in the Winter Park PUD Ordinance 83–32 and which it had before it for consideration to impose in Naples Sunrise 2." | Para. 24 | Para. 12 |
| 6. "If plaintiffs are forced to meet the utility requirements in the Winter Park PUD, they must spend monies to construct on site water and sewer lines and facilities in Winter Park entirely at their cost and at no cost to the County or to the district. Plaintiffs must also give these facilities to the County, must give up the right to serve customers in Winter Park and still must pay system development charges . . . before the County will issue building permits to plaintiffs. . . ." | Para 25 | Para 32 |
| 7. "[D]evelopers are not being treated the same and . . . defendants are unlawfully discriminating against plaintiffs in the restrictions and conditions which the County has placed on the Winter Park PUD Ordinance No. 83–32." | Para 26 | Para 33–34 |
| 8. "The conditions in PUD Ordinance No. 83–32 constitute confiscation of plaintiffs' property and their present and future property rights including the right to real property, personal property and the right to earn utility and other revenues from the Winter Park area." The conditions in Ordinance No. 83–32 are being applied "in a discriminatory, arbitrary and capricious manner." | Para 27 | Para 35 |

| ALLEGATIONS | AMENDED FEDERAL COMPLAINT | SECOND AMENDED COMPLAINT IN STATE COUNT CASE NO. 83–1856 |
|---|---|---|
| 9. Defendants have sought to limit the size, development and expansion of plaintiffs' utility. | Para 30 | Para 43 |
| 10. Defendants have injured plaintiffs by depressing the value of plaintiffs' property so that defendants can purchase or take the property for less than just, fair and constitutional value. | Para. 32(b), 34, 37, 38 | Para. 43, 44 |
| 11. The Board of County Commissioners lacks jurisdiction to grant or deny water or sewer franchises to ENWS. "If the Board does have such jurisdiction, plaintiffs assert that defendants have confiscated plaintiffs' property and have discriminated against plaintiffs by the Board's vote on February 14, 1984 to offer water and sewer franchises to ENWS under the terms set forth in those franchises." | Para. 33 | Para. 37, 59, 62 |
| 12. "Defendants have arbitrarily, selectively and unlawfully imposed on some developers and utilities several restrictions similar to those alleged in the water and sewer franchises alleged herein and defendants have not imposed similar restrictions on others." | Para. 39 | Para. 45 |

The material allegations of Plaintiffs' amended federal complaint are indeed averred in Plaintiffs' second amended claim in state court Case No. 83–1856. Many of the allegations are repeated virtually identically. In view of the identity between Plaintiffs' claims in the instant action and the state court action, and the nature and progress of the claims embodied in those actions, the Defendants have mounted a very serious motion to dismiss or otherwise stay the federal lawsuit on the grounds of abstention.

Since at least as early as 1941, *see e.g., Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court and the lower federal courts have recognized that under certain limited circumstances a federal court may decline to proceed though it has jurisdiction under the constitution and the statutes. Over the years, the cases have recognized not one but really multiple applications of the abstention doctrine arising in different factual and procedural contexts. The doctrine of abstention, which may give rise to staying or dismissing altogether a federal claim in federal court in lieu of a pending state court action, has been applied in at least these confined circumstances: (1) abstention has been said to be an appropriate

remedy in those cases presenting a federal constitutional issue which might be mooted or perhaps presented in a somewhat different posture by a state court determination of pertinent state law. The seminal case outlining this exception to enforcement of federal court jurisdiction is found in *Railroad Commission of Texas v. Pullman Co., supra;* (2) abstention has also been found appropriate where there are difficult questions of state law presented bearing on policy problems of such public import transcending the result in a case then at issue; (3) abstention has been applied where, in the absence of bad faith, harassment, or an invalid state statute federal jurisdiction had been invoked in order to restrain state criminal proceedings; and (4) finally, in *Colorado River Water Con. Dist., et al. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 Ed.2d 483 (1976), the Supreme Court recognized that even where a case may not fall within any of these three categories "there are principles unrelated to the consideration of proper constitutional adjudication and regard for federal-state relations which may govern in situations involving the contemporaneous exercise of concurrent jurisdiction by federal courts or by state and federal courts. These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'." *Colorado River Water Conservation District, et al. v. United States, supra,* 424 U.S. at 817, 96 S.Ct. at 1246, 47 L.Ed.2d at 498.

At the core of the abstention doctrine, or perhaps more properly, the abstention doctrines, are the notions that federal courts should avoid deciding constitutional issues when possible, that federal courts are obligated to decide cases which fall properly within their jurisdiction, and that the courts should seek to reduce conflict between the federal and state systems.

In the instant case, Defendants have invoked two discernable abstention categories to support their motion to dismiss or stay the instant lawsuit: first, the doctrine of *Colorado River Water Conservation District, et al. v. United States, supra,* and, second, the doctrine first expounded in *Railroad Commission of Texas v. Pullman Co., supra.*

The *Colorado River Water Conservation District* case made clear that the doctrine of abstention can be justified "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.,* 424 U.S. at 814, 96 S.Ct. at 1244, 47 L.Ed.2d, at 496. The High Court noted that the doctrine was not an equitable one giving federal courts the option to exercise it's judicial discretion to dismiss a suit merely because a state court could entertain that suit. The mere pendency of a similar action in state court is no bar to a proceeding concerning the same matter in the federal court where the federal court has jurisdiction. This notion stems from "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.,* 424 U.S. at 817, 96 S.Ct. at 1246, 47 L.Ed.2d, at 498. Or as Chief Justice Marshall put it in *Cohens v. Virginia,* 6 Wheat 264, 5 L.Ed. 257 (1821): "It is most true, that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot as a legislature may avoid a measure because it approaches the confines of the constitution. . . . with whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." The *Colorado* case, however, did recognize that in assessing the appropriateness of applying the doctrine where concurrent jurisdiction is extent, a federal court may consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction may have been obtained by the concurrent forums. No one factor may be fully determinative and a careful consideration must be made "taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise."

*Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 819, 96 S.Ct. at 1247, 47 L.Ed.2d at 499.

In the instant case, in our judgment, Defendants have established a compelling argument for the application of the *Colorado* abstention doctrine. First, we note, again, that state court Case No. 83–1856 was commenced by Plaintiffs in Florida Circuit Court back in September 1983, substantially before any cause of action was filed in the federal courts. Indeed, this Court's jurisdiction did not attach until some 18 months later when the initial federal complaint was filed in or about March 1985. In the second place it is equally clear that state court Case No. 83–1856 has progressed substantially beyond the instant case in terms of discovery and final disposition. The Supreme Court has noted in *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 21, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983) that the progress made along with the adequacy of the state court proceeding to protect the rights of the parties are relevant considerations.

A substantial variety of procedural and substantive motions have been made and resolved in connection with the state court Case No. 83–1856, and indeed Plaintiffs' recent motion for partial summary judgment in that case in Florida Circuit Court was denied by the court. In the instant case Defendants have not yet answered the amended federal complaint, rather they have placed the sufficiency of the Plaintiffs' amended complaint into controversy in this court by virtue of a motion to dismiss now pending. The state court case has already involved the taking of substantial discovery including numerous interrogatories and expansive document production along with the deposition of both individual Defendants and several non-party witnesses.

We note again, that all of the material allegations pleaded in the amended federal complaint were initially averred in Plaintiffs' second amended complaint in the state court. The only meaningful distinction between the two lawsuits is that the instant federal complaint charges that the County through the Defendant County Manager Lusk allegedly interferred with ENWS existing business relationship by soliciting it's prospective customers, and, indeed, proof of this charge involves facts substantially identical to those substantiating Plaintiffs' claims in the state court case. The hard truth is that Plaintiffs' amended federal complaint and the claims they have raised in the state court are indeed inextricably entwined. In an oral argument recently held in connection with the instant application in federal court, counsel for Plaintiffs conceded that the complaints are virtually identical except for having added claims against Lusk and Berzon.

A similar issue was raised recently in *Rattner v. Board of Trustees of Village of Pleasantville,* 611 F.Supp. 648 (S.D.N.Y. 1985), where the district court faced a motion by Defendants to stay a federal court proceeding, also brought under Title 42 U.S.C. Section 1983, pending the outcome of a state court action involving the same allegations. In that case, property owners brought civil rights suit against various village officials alleging harassment through, among other things, enforcement of various parking and zoning ordinances. The district court held that in the proper exercise of discretion the action should be stayed, finding that "the intercession of a federal court at this stage in the litigation will have an ill effect upon the swift, efficient and unified resolution of the issues underlying the various lawsuits." *Id.* at 654. The district court stayed the federal action until determination by the state court of mutual issues currently pending in that court. That decision, much like the instant one, recognized, as the Supreme Court of the United States pointed out, in *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp., supra,* that there are no hard and fast rules which provide resolution for this discretionary issue; rather "the decision requires a balancing of various factors including the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained by the

state and federal forums, and the degree to which the cases necessitate duplication of discovery or issue resolution." *Rattner v. Board of Trustees the Village of Pleasantville,* 611 F.Supp. 648 at 654.

In *Rattner,* the court specifically found that the federal case was inextricably intertwined with the state case, that the state case had already produced extensive discovery and that the allegations of deprivation of Title 42 U.S.C. Section 1983 fundamentally involved matters of state law "the interpretation of which is perhaps better suited to a state court more familiar with the subject matter involved." *Id.*

Finally, that court recognized, as it must, that state courts are also fully competent to handle the constitutional issues raised by the petitioners.

The second prong or category of abstention cases relied upon by Defendants in support of a stay was originally enunciated by the Supreme Court of the United States in *Railroad Commission of Texas v. Pullman, supra.* In that case, the company sought to enjoin enforcement of an order of the Texas Railroad Commission, claiming that the order denied it's rights under the Fourteenth Amendment and also that Texas law did not give the Commission authority to make the particular order in question. While there was little doubt that the federal court had jurisdiction to decide the ancillary state question, the central issue was the wisdom of exercising that jurisdiction. A unanimous court speaking through Mr. Justice Frankfurter said: "In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. The reign of law is hardly promoted if an unnecessary rule of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." 312 U.S. at 500, 61 S.Ct. at 645. The Supreme Court ordered the trial court to abstain from deciding the case but to retain jurisdiction until the parties had had an opportunity to obtain from a state court a ruling on the state issues involved. In this way the federal court might appropriately avoid deciding a federal constitutional question unnecessarily or perhaps prematurely where the state court may resolve the same matter on state grounds.

*Pullman* -type abstention has been ordered in many contexts by the Supreme Court. To apply the *Pullman* doctrine of abstention, one must find that the state law must involve interpretation which will render unnecessary or substantially modify the federal constitutional question. *See, Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Also relevant in these considerations are the subject matter of the state law which may be under challenge and the nature of the constitutional right which may have been claimed to be infringed. The cases have shown a marked propensity to permit abstention when state law issue involves the allocation of legislative authority between a state and local government, *see e.g., City of Chicago v. Fieldcrest Dairies,* 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942), or the regulation of important natural resources including water, *see e.g., Kaiser Steel Corp. v. W.S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) and *Lake Carriers' Assoc. v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), or fishing rights, *see e.g., Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), and *Santa Fe Land Imp. Co. v. City of Chula Vista,* 596 F.2d 838 (9th Cir.1979) (abstention found appropriate in an action challenging zoning laws). *See, also,* 1A Part 2, Moores Federal Practice, Section 0.203 (1) at 2114 (2nd Ed.1982).

The instant case involves issues of Florida zoning and land regulation law and private utility regulation law which are by no means clear at this point. And the Plaintiffs' federal claims turn in no small measure upon the resolution of those local and state issues. We add that these issues will be resolved shortly in state court Case

No. 83–1856, and thus we conclude that this is an appropriate case to apply the abstention doctrine both for the reasons explained in the *Colorado* doctrine and for those expounded in *Pullman* and its progeny. *See, also, Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092 (9th Cir.1976) where the Court of Appeals for the Ninth Circuit affirmed the application of the abstention doctrine to a Section 1983 action involving members of the City Council and Planning Commission who allegedly conspired to deprive a land owner of the use of his undeveloped real property. In that case the Ninth Circuit noted that a court would have to decide first that the Plaintiff had certain state rights before it could determine whether or not there had been a deprivation of the equal protection of those state laws. "Resolution of the state law question," it noted, "is thus a necessary preliminary to reaching the federal constitutional question. If the state question is decided in the Plaintiff's favor then the state court might grant appropriate relief. The federal constitutional question then will not need to be reached. A state adjudication of appellee's state question could result in a termination of the controversy." *Id.* at 1095.

In the instant case, it will be necessary to determine what rights the Plaintiffs have under local and state law. That determination will be made most appropriately in state court Case No. 83–1856. Indeed, the adjudication of those issues may render altogether unnecessary the need to address the constitutional issues in the instant case. Moreover, even if it becomes necessary to address those issues they may be addressed in a wholly different way. In short, we think Defendants are correct in seeking the application of the abstention doctrine here. In light of unclear issues of Florida law, the substantial identity of the material allegations in the two suits, the progress of the respective cases, and the interest of judicial economy, we find that this Court should abstain pending the conclusion of the state court Case No. 83–1856. We hasten to add, however, that we retain jurisdiction rather than dismiss the instant case.

For the reasons described hereinabove, it is hereby

ORDERED AND ADJUDGED that the Defendants' motion to stay these proceedings until the conclusion of the aforementioned state case is hereby GRANTED.

The other open and outstanding motion's filed by the Defendants, including the motion to dismiss the amended complaint for failure to state a claim are DENIED in view of this Court's ruling as to stay without prejudice to the Defendants to renew them at such point as the parties may return to federal court and seek to lift the stay in this matter.